**KLESTADT WINTERS JURELLER
  SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, New York 10036-7203
Tel: (212) 972-3000
Fax: (212) 972-2245
Tracy L. Klestadt

*Proposed Counsel to Fortuna Auction LLC
 Debtor and Debtor in Possession.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re                                                      :
                                                           :    Chapter 11
FORTUNA AUCTION LLC,                                       :
                                                           :    Case No. 25-10632
                         Debtor.                           :
                                                           :    Subchapter V
-----------------------------------------------------------x

# DECLARATION OF HERBERT JOHN SAXON, MANAGER OF THE DEBTOR, PURSUANT TO LOCAL BANKRUPTCY RULE 1007-4

Herbert John Saxon, being duly sworn, declares and states, under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1.  I am the manager of Fortuna Auction LLC, the above-captioned debtor and debtor in possession ("FORTUNA" or "Debtor"). In that role, I am the officer with primary responsible for the business and financial affairs of the Debtor. I am familiar with the Debtor's operations and books and records, which I personally know are made and maintained in the ordinary course of business. On this basis, I have personal knowledge of the facts stated herein or knowledge based on the business records that are made and maintained in the Debtors' ordinary course of business, the information supplied to me by (a) employees who report directly to me, or (c) the Debtor's general bankruptcy counsel and other legal and professional advisors.

2.  I submit this declaration (the "Declaration") in accordance with Rule 1007 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") and in connection with the Debtor's voluntary petition (the "Petition") for relief under subchapter V of title 11 of the United States Code (the "Bankruptcy Code") filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (the "Subchapter V Case") on April 1, 2025 (the "Petition Date"). I make this Declaration to provide the Court and all parties in interest with an overview of the Debtor, its business and the events precipitating the commencement of the Debtor's Subchapter V Case. This Declaration also supports the Debtor's voluntary petition.

3.  Except as otherwise indicated herein, the facts set forth in this Declaration are based on my personal knowledge, my review of relevant documents, information provided to me by the Debtor's employees or professionals, or my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and the industry in which they operate. I am authorized to submit this Declaration on the Debtor's behalf. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

4.  On the Petition Date, I caused the Debtor to file a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The Debtor commenced this Subchapter V Case to effectuate a restructuring of its capital structure and operations under Subchapter V of Chapter 11 of the Bankruptcy Code.

5.  The Debtor is a small business debtor within the meaning of Bankruptcy Code § 101(51D). The Debtor continues to operate its business and manage its assets as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.      There is no other or prior bankruptcy case filed by or against the Debtor. To the best of my knowledge, no committee of unsecured creditors was organized prior to the order for relief in the Debtor's Subchapter V Case.

7.      A copy of the resolution authorizing the filing of this Subchapter V Case is attached to their respective Petitions and incorporated by reference herein. Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis.

8.      **Importantly, the Debtor intends to utilize the SubChapter V plan process in order to repay its consignor creditors** (i.e., its customers whose items were sold at auction but were not paid the proceeds of sale as a result of the Debtor's cash flow issues described in more detail below) **100% of the amounts owed to them. This will be accomplished either through new investment funds, or by the commitment of the Debtor's disposable income under a Subchapter V plan of reorganization over the next 3 to 5 years.**

9.      **In addition, new accounting controls will be implemented for going forward auctions, and new Debtor In Possession bank accounts will be established at Flagstar Bank. For any auctions conducted after the start of the bankruptcy case, consignors will be promptly paid for items sold.**

A. **Background of the Debtors' Business**

    A. **History**

*10.*    The business was started in 2016 by myself, my wife Maria Saxon, Seth Holehouse and his wife, Anna Lin. By 2019, FORTUNA had firmly established itself as an innovative alternative to traditional auction houses, offering a transparent, seller-friendly model that gained the trust of both private clients (non-professionals) and dealers (industry professionals) alike. Our business model was clear: we sold items on behalf of consignors and, once full payment from the

3

winning bidder—including both the hammer price and buyer's premium—had been received and cleared, we paid the consignor the hammer price less the agreed-upon seller's premium and any applicable fees. The buyer's premium and seller's premium together represented our gross revenue, from which we covered operating costs, commissions to referring parties, and retained profit.

11. By 2019, our auctions were breaking records, investor interest was surging, and a Series A capital raise was gaining serious momentum. With over 40 institutional and private investors engaged in active discussions, we were on the verge of a major expansion that would propel the business to new heights. Everything was moving in the right direction—until it abruptly unraveled that same year.

12. In 2019, significant internal upheaval arose following the divorce of two of the company's founding partners, Mr. Holehouse and Ms. Lin. As a result, Mr. Holehouse departed the business entirely, and Ms. Lin transitioned out of day-to-day operations. These developments disrupted the company's leadership structure and created uncertainty both internally and externally. News of the events spread quickly within the close-knit industry, resulting in reputational harm and the abrupt loss of long-standing relationships with clients.

13. While we were still scrambling to recover and stabilize from the above issues, the COVID-19 pandemic struck in early 2020. The luxury auction industry was devastated. Buyers and sellers froze, consignments disappeared, and our operations—dependent on in-person assessments, international shipping, and high-touch logistics—were effectively shut down—especially with the lockdown mandates. The business suffered immense financial strain and loss.

14. At the end of 2019, we were approached with what appeared to be a promising investment opportunity. An individual named Sherwin Loh pledged to invest approximately $7

4

million into the company, with the funds expected to arrive by the end of the fourth quarter of 2019. As a gesture of good faith, he provided a six-figure sum to the founders to sustain them during the interim, as the company was not able to provide them personal income in its current condition. These funds were provided with no strings attached and were explicitly understood to be non-refundable. In return, Mr. Loh was to receive investment exclusivity, priority, and a minor valuation discount once his full investment was made.

15. However, shortly after providing the initial funds, Mr. Loh began insisting on an active, day-to-day leadership role within the company. While this had not been clearly presented as a condition at the outset, we felt obligated to accommodate his request given the exclusivity arrangement and our reliance on the promised capital. This role required visa sponsorship and came with a substantial salary. In that capacity, Mr. Loh was granted significant operational and financial authority, which he exercised broadly throughout his tenure.

16. Despite repeated assurances, the full investment never arrived. Month after month, Mr. Loh offered shifting explanations and delays, leaving the company financially constrained and unable to pursue other investor relationships due to the exclusivity he had required. When we ultimately terminated his salaried position due to these failures and their impact on the business, Mr. Loh responded by initiating legal action against the company.

17. Between 2020 and 2024, the company faced a number of serious setbacks. Two former employees stole confidential company information, including client lists, prompting the company to pursue legal action against one of them. During this time, Ms. Lin, who remained a member of the company, formed a short-lived competing business. The company also lost access to multiple critical low-interest, long-term SBA loans that were in the final stages of approval, due to Ms. Lin's refusal to sign the required documents. This resulted in the loss of what had been the

5

most viable path to financial recovery following the disruption of 2019 and the impact of the COVID-19 pandemic.

18. Unable to secure traditional financing and desperate for cash flow, we turned to Merchant Cash Advance (MCA) lenders in late 2022. While these initially appeared to offer relief, they quickly accelerated our decline. Between 2022 and 2024, the company paid approximately $907,000 in interest alone to MCA lenders. The crushing repayment terms and sky-high interest rates depleted our working capital at an unsustainable pace. This left us unable to pay consignors on time, damaging trust and igniting panic among industry insiders.

B. **Circumstances Leadings to Filing the Subchapter V Cases**

19. The delayed payments to consignors—coupled with rumors fueled by former employees and angry clients—sparked a vicious cycle of fear and distrust. Consignments dried up, revenue dropped, and our ability to meet existing obligations eroded. Even though the business model remained strong and our auctions continued to perform, the cash flow crisis caused by MCA repayments became a noose around our neck.

20. In an effort to regain control, we engaged a firm that claimed to specialize in MCA negotiations and paid a $50,000 retainer. They promised to reduce our obligations through restructuring and negotiation, but failed to deliver any tangible results. Lenders ignored them, their reporting was misleading, and their incompetence left us vulnerable. Worse still, when we questioned their performance, they responded with threats of litigation. Ultimately, through our bankruptcy counsel, we were able to recover $30,000 of the retainer and obtain a release of any further alleged claims for fees that the law firm asserted.

21. Despite these extraordinary challenges, we remained committed to preserving and rebuilding the business. Through aggressive cost-cutting, operational discipline, and the

6

reestablishment of key industry relationships, we successfully returned FORTUNA to EBITDA profitability in three of the last four years. These results underscore the strength of our underlying business model and reflect the resilience, adaptability, and dedication of our team in the face of prolonged adversity.

22. Over the past several months, the company's ability to operate was overwhelmed by mounting MCA obligations, legal expenses, loss of consignor trust, and broader industry headwinds. While several investors have recently expressed interest in supporting the business during this tough time, none have moved forward quickly enough. When we raised the possibility of a formal restructuring to eliminate the burden of predatory debt, that interest was reactivated. We believe that, if we are able to implement the restructuring strategy contemplated under this Subchapter V case, those investors are likely to re-engage. At this point, bankruptcy protection represents the company's only viable path forward to preserve operations, protect creditors, and restore long-term value.

### C. The Debtors' Business

#### i. Corporate and Ownership Structure

23. The Debtor is a limited liability company organized under the laws of the State of Delaware. Fortuna Luxury Group LLC ("Fortuna Holdings") is the parent company of the Debtor. The memberships interests of Fortuna Holdings are held by myself 75% and Anna Lin 25%.

#### ii. The Debtors' Senior Management

24. I am the currently the sole manager of the Debtor.

#### iii. Capital Structure

25. The following loans were taken out by the Debtor from various MCAs , including the following: (i) Amerifi Capital LLC, (iii) Avanza Capital Holdings LLC, (iii) Bluevine,, (iv)

7

Breakout Capital LLC, (v) EBF Holdings, LLC d/b/a Everest Business, (vi) Parkside Funding Group LLC, (vii) Rapid Finance, (viii) Specialty Capital LLC, (ix) Square Financial Services, Inc., (x) Square Funding LLC d/b/a Square Advance. Liability, and any amount owed, are disputed.

### iv. The Debtors' Employees

26. The Debtor currently has 3 full-time and no part-time employees, plus two part-time consultants.

### v. . Debtors' Assets and Liabilities

27. A current balance sheet and summary of the Debtors' assets and liabilities is attached as **Exhibit A**.

### vi. Debtors' Insurance

28. As of the Petition Date, Debtor maintains an insurance policy issued by Jewelers Mutual Insurance Company, policy no. 55-012931, effective dates 9/15/2024 through 9/15/2025.

### vii. Bank Accounts

29. As of the Petition Date, Debtor maintains 4 bank accounts, as listed below, and will be opening a debtor in possession account at Flagstar Bank immediately upon the filing of these Subchapter V Case. Debtor's counsel also has on deposit in its escrow account the sum of $19,744.20, which shall be transferred to Flagstar Bank upon the opening of the debtor in possession account.

| Financial Institution | Type of Account | Last 4 Digits of Account | Balance on Petition Date |
|---|---|---|---|
| Bank of America (subject to creditor restraint) | Checking | 4356 | $6,780.77 |
| Bank of America | Payroll | 4343 | $1.20 |
| Bank of America | Business | 5151 | $0.00 |
| Bluevine | Checking | 7612 | $.07 |

8

    **viii.**    **Debtors' Receivables**

30.    The Debtors are owed receivables that have a face value of $31,619.19.

    **ix.**    **Debtor Property Held by Others**

31.    The Debtor has no property in possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity. *See* Local Rule 1007-4 (a)(10).

    **x.**    **Location of Debtors' Assets and Books and Records**

32.    The majority of the Debtor's books and records are maintained online via a QuickBooks account (remotely accessible).

    **xi.**    **Twenty Largest Unsecured Creditors**

33.    A list setting forth the Debtor's twenty (20) largest unsecured creditors, excluding those persons who constitute "insiders" under Bankruptcy Code section 101(31), is attached hereto as **Exhibit B**. **Exhibit B** includes the creditors' names, addresses, telephone numbers (for persons familiar with the account, if available), amount of each claim, and an indication of whether the claims are contingent, unliquidated, disputed, or partially secured.  This list includes the largest of the MCAs.  The MCAs claim to have purchased certain of the Debtor's receivables or have alleged a security interest in the Debtor's assets.  The Debtor believes that none of the MCAs have properly perfected any claimed security interest.  As such, the MCAs will be listed on Schedule D of the Debtor's Schedules of Assets and Liabilities as Disputed, Contingent and Unliquidated Claims.

    **xii.**    **Five Largest Secured Creditors**

34.    See paragraph 33 above.

### xiii. Threatened or Pending Actions Against the Debtor

35. The Debtor is a defendant in the following pending lawsuits:

Sherwin Loh and Chong Sing Loh v. Herbert John Saxon, Maria Saxon, and Fortuna Auction LLC, Supreme Court of the State of New Yok, County of New York, Index no. 654601/2023.

Carroll v. Fortuna Auction LLC and Herbert John Saxon, United States District Court, Southern District of New York, Civ.Ac. No. 23-cv-7410.

Amerifi Capital LLC. V. Fortuna Auction LLC et al., Superior Court of Stamford, Connecticut, No. FST-CV25-6072084-S.

Square Funding LLC v. Fortuna Auction et al., Arbitration Services, Inc..

Parkside Funding Group LLC v. Fortuna Auction LLC and Herbert John Saxon, Supreme Court of the State of New York, County of Nassau, Index no. 605165/2025.

Avanza Capital Group LLC v. Fortuna Auction LLC and Herbert John Saxon, Supreme Court of the State of New York, County of Monroe.

Breakout Capital LLC v. Fortuna Auction LLC et al., Circuit Court of Fairfax, State of Virginia, Case no. CL-2025-0004246.

Small Business Financial Solutions, LLC v. Fortuna Auction LLC et al., Circuit Court of Maryland for Montgomery County, Case no. c-15-cv-25-0000632.

### D. The Debtor's Post-Petition Operations and Goals

36. Following the Petition Date, the Debtor intends to continue the operation of its business and the management of its properties as Debtor and Debtor in Possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

37. The Debtor proposes to pay its employees a total bi-weekly payroll of $19,500.00, as itemized below:

| Bi-Weekly Payroll | |
|---|---|
| Employee Payroll | 12,500.00 |
| Manager's Payroll | 5,000.00 |
| Part-time consultants | 2,000.00 |
| TOTAL | $19,500.00 |

10

38. During the pendency of this Subchapter V Case, the Debtor anticipates using the tools set forth in the Bankruptcy Code to restructure its debts. I believe the reorganization of the Debtor's businesses will benefit the Debtor's creditors.

## Conclusion

39. The Debtor reserves the right to amend or supplement any of the schedules annexed hereto as exhibits in the event additional information is obtained by the Debtor during the course of these proceedings.

40. I believe that the protection of the Bankruptcy Court will enable the Debtor to maximize the value of its assets for the benefit of the Debtor's estate and its creditors.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: April 2, 2025

/s/ Herbert John Saxon
Herbert John Saxon

# Exhibit A

**Fill in this information to identify the case:**

Debtor name: **FORTUNA AUCTION LLC**

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case number (if known): _____

☐ Check if this is an amended filing

# Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals       12/15

### Part 1:    Summary of Assets

1. *Schedule A/B: Assets-Real and Personal Property* (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*................................................................  $               0.00

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*..............................................................  $          54,351.48

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*................................................................  $          54,351.48

### Part 2:    Summary of Liabilities

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*...........  $               0.00

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   **3a. Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*.........................  $           2,452.28

   **3b. Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*...........  +$       1,932,891.10

4. **Total liabilities** ........................................................................
   Lines 2 + 3a + 3b                                                                               $       1,935,343.38

10:09 AM
04/02/25
Accrual Basis

# Fortuna Auction LLC
## Balance Sheet
### As of April 1, 2025

|  | Apr 1, 25 |
|---|---:|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| Funds Held in Escrow | 19,744.20 |
| Bluevine Bank Account | 0.07 |
| BoA Operations x4356 | 6,780.77 |
| BoA Payroll Account | 1.20 |
| Petty Cash | 4,489.60 |
| **Total Checking/Savings** | 31,015.84 |
| **Accounts Receivable** | |
| Accounts Receivable (A/R) | 31,619.19 |
| **Total Accounts Receivable** | 31,619.19 |
| **Other Current Assets** | |
| Inventory | 71,634.48 |
| Security Deposit | 77,000.00 |
| Prepaid Expenses | 40,230.40 |
| Due from ... | 48,685.00 |
| Undeposited Funds | 7,557.27 |
| **Total Other Current Assets** | 245,107.15 |
| **Total Current Assets** | 307,742.18 |
| **Fixed Assets** | |
| Leasehold Improvements | 55,064.61 |
| Computers | 69,852.66 |
| Office Equipment | 42,284.26 |
| Safe | 17,475.59 |
| Furniture & Fixtures | 38,109.09 |
| Software Development | 228,610.55 |
| Photography Equipment | 21,163.36 |
| Accumulated Deprec/Amort | -256,992.31 |
| **Total Fixed Assets** | 215,567.81 |
| **TOTAL ASSETS** | **523,309.99** |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| AP - Vendors | 172,589.67 |
| Accounts Payable (A/P) | 1,215,299.52 |
| **Total Accounts Payable** | 1,387,889.19 |

Page 1

10:09 AM
04/02/25
Accrual Basis

# Fortuna Auction LLC
## Balance Sheet
### As of April 1, 2025

|  | Apr 1, 25 |
|---|---:|
| **Credit Cards** | |
|   **Credit Cards** | |
|     **BoA Corp CC x4843** | |
|       BoA CC x3923 | 31,489.83 |
|       BoA CC x1712 | 45,254.84 |
|       BoA Corp CC x4843 - Other | 16,747.55 |
|     Total BoA Corp CC x4843 | 93,492.22 |
|     **BoA Corp CC x6528** | |
|       BoA CC x9529 | 30,171.89 |
|       BoA CC x4449/7967 | 18,365.12 |
|       BoA Corp CC x6528 - Other | -9,593.40 |
|     Total BoA Corp CC x6528 | 38,943.61 |
|     **Amex Prime Credit Card** | 33.67 |
|     **AMEX Blue x61001** | 287.26 |
|     **Chase Ink x9037** | 30,043.51 |
|     **Chase Ink x8105/6601/4301** | 29,916.82 |
|     **Chase Visa - M. Saxon x6852** | 28,682.23 |
|   **Total Credit Cards** | 221,399.32 |
| **Total Credit Cards** | 221,399.32 |
| **Other Current Liabilities** | |
|   Accrued Expenses | 99.00 |
|   Sales Tax Payable | 17,362.12 |
|   Payable to Consignors | 40,150.50 |
|   Square Gift Card | 1,000.00 |
| **Total Other Current Liabilities** | 58,611.62 |
| **Total Current Liabilities** | 1,667,900.13 |
| **Long Term Liabilities** | |
|   Loan Payable - Avanza Capital | 108,399.96 |
|   Loan Payable - Amerifi Capital | 85,988.61 |
|   Loan Payable - Specialty Capita | 13,461.55 |
|   Loan Payable - Breakout Capital | 65,124.04 |
|   Loan Payable - EBF Holdings | 70,513.00 |
|   Loan Payable - Parkside Funding | 175,000.00 |
|   Loan Payable - Overton Funding | 336,893.36 |
|   Loan Payable - Small Business F | 32,714.80 |
|   Square Loan Payable | 107,572.14 |
|   Square Loan Payable 3 | 166,420.87 |
|   Loan Payable - CS Loh | 80,824.04 |
|   Loan Payable - Herbert Saxon Sr | 144,495.22 |
|   Loan Payable - Anna Lin | 34,062.54 |

Page 2

10:09 AM  
04/02/25  
Accrual Basis

# Fortuna Auction LLC
## Balance Sheet
### As of April 1, 2025

|  | Apr 1, 25 |
|---|---:|
| Loan Payable - Celtic Bank 2 | 11,001.98 |
| Loan Payable - Celtic Bank | 33,580.80 |
| **Total Long Term Liabilities** | 1,466,052.91 |
| **Total Liabilities** | 3,133,953.04 |
| Equity |  |
| Member Distrib - John | -621,396.93 |
| Member Distrib - Seth | -60,000.00 |
| Common Stock | 500.00 |
| Owner's Investment | 200.00 |
| Retained Earnings | -1,693,786.65 |
| Net Income | -236,159.47 |
| **Total Equity** | -2,610,643.05 |
| **TOTAL LIABILITIES & EQUITY** | **523,309.99** |

Page 3

# Exhibit B

Fill in this information to identify the case:

Debtor name: **FORTUNA AUCTION LLC**

United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF NEW YORK**

Case number (if known):

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 608 Company, LLC c/o CBRE Property Mgmt/Att: Theresa Egan 58 South Service Road, Suite 410 Melville, NY 11747 | | Nonresidential real property lease rent arrears - judgment entered 3/6/2025 | | | | $213,170.92 |
| A2M GEMS INC Attn: Michael Davidov, Aron Bangiew 55 West 47th Street, Suite 640 New York, NY 10036 | | Consigned items sold | | | | $153,030.00 |
| Herbert Leslie Saxon 14267 Halls Hill Pike Milton, TN 37118 | | Loan | | | | $144,495.22 |
| BNB Luxury LLC Attn: Jordan Baumblit 32 W 47th Street, Suite 6 New York, NY 10036 | | | | | | $96,625.00 |
| Bank of America P.O. Box 660441 Dallas, TX 75266-0441 | | | | | | $93,492.22 |
| Emsaru Attn: Atul Dangayach 608 5th Avenue, Suite 500 New York, NY 10020 | | Consigned items sold | | | | $82,810.00 |

Official form 204        Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured claims        page 1

Debtor **FORTUNA AUCTION LLC**  
Name

Case number *(if known)*

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim  If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **JB Jewels**<br>**Attn: Jane Becker**<br>**17 Chittenden Avenue, 5B**<br>**New York, NY 10033** | | **Consigned items sold** | | | | **$75,140.00** |
| **Jewelry World**<br>**Attn: Guy Attia**<br>**19275 Biscayne Boulevard, No. 6**<br>**Aventura, FL 33180** | | **Consigned items sold** | | | | **$63,450.00** |
| **Education + Implementation Services LLC**<br>**14267 Halls Hill Pike**<br>**Milton, TN 37118** | | **IT support services** | | | | **$51,348.50** |
| **C.S. Loh**<br>**18 Melrose Drive**<br>**Singapore 358511** | | | **Contingent Unliquidated Disputed** | | | **$50,000.00** |
| **Bank of America**<br>**P.O. Box 660441**<br>**Dallas, TX 75266-0441** | | | | | | **$38,943.61** |
| **Neil Doughty**<br>**5321 Chateau Place**<br>**Minneapolis, MN 55417** | | **Consigned items sold** | | | | **$36,780.00** |
| **Southern Utah Gem & Jewelry Appraisals**<br>**Attn: Patrick Stout**<br>**1031 South Bluff Street, Suite 116**<br>**St. George, UT 84770** | | **Consigned items sold** | | | | **$35,105.00** |
| **Robyn Wolfson**<br>**751 W Park Avenue**<br>**Longbeach, NY 11566** | | **Consigned items sold** | | | | **$34,820.00** |
| **Jerry Hogan Inc.**<br>**Attn: Jerry Hogan**<br>**22 West 48th Street, 14th Floor**<br>**New York, NY 10036** | | **Consigned items sold** | | | | **$33,130.00** |
| **Color Jewels Inc.**<br>**Attn: Tarun Dangayach**<br>**36 W 44th Street, No. 900**<br>**New York, NY 10036** | | **Consigned items sold** | | | | **$30,750.00** |

Debtor **FORTUNA AUCTION LLC**
Name

Case number *(if known)*

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| **Jane Seibert**<br>**30 Vista Drive**<br>**Little Silver, NJ**<br>**07739-1612** | | **Consigned items sold** | | | | **$30,731.00** |
| **Chase**<br>**P.O. Box 15123**<br>**Wilmington, DE**<br>**19850-5123** | | **Credit card charges** | | | | **$30,031.72** |
| **Chase**<br>**P.O. Box 15123**<br>**Wilmington, DE**<br>**19850-5123** | | **Credit card charges** | | | | **$29,916.82** |
| **Chase**<br>**P.O. Box 15123**<br>**Wilmington, DE**<br>**19850-5123** | | **Credit card charges** | | | | **$28,682.23** |