UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| FORTUNA AUCTION LLC, | : | (Subchapter V) |
| Debtor. | : | Case No. 25-10632 (MG) |

---------------------------------------------------------x

## OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S FIRST AMENDED CHAPTER 11 (SUBCHAPTER V) PLAN OF REORGANIZATION

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), by and through his undersigned counsel, hereby submits his objection (the "Objection") to the *First Amended Chapter 11 (Subchapter V) Plan of Reorganization* [ECF No. 74] (as may be further amended from time to time, the "Amended Plan"), filed by Fortuna Auction LLC (the "Debtor") in the above caption Chapter 11, Subchapter V case (the "Case"). In support of the Objection, the United States Trustee respectfully states:

### PRELIMINARY STATEMENT

The United States Trustee objects to confirmation of the Amended Plan for several reasons. First, notice and service of the Amended Plan was procedurally improper under Bankruptcy Rules 2002 and 3017. Second, the Amended Plan contains expansive, confusing, and overreaching provisions on injunctions, release, and exculpation that must be removed entirely. In particular, the injunction staying any actions against Mr. Saxon and any co-debtor is a disguised non-consensual, non-debtor third-party release that is prohibited under the Supreme Court's opinion in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024). Third, there is no statutory or legal basis for the Debtor to treat section 507 priority tax claims as unimpaired (and not entitled to vote) when they are not being repaid in full upon the effective date of the

Amended Plan.  And lastly, if the Debtor seeks to confirm the Amended Plan as a cram-down, it cannot possibly satisfy the requirements under section 1191(b) that the plan does not discriminate unfairly and is fair and equitable with respect to each impaired class of claims or interest where the Amended Plan does not provide for all of the Debtor's projected disposable income to be applied to distributions under the Amended Plan.  For all these reasons, and as discussed more fully below, the United States Trustee requests that the Court deny confirmation of the Amended Plan.

### RELEVANT FACTS

1.      On April 1, 2025, the Debtor commenced the instant Case by filing a voluntary petition for relief under chapter 11, subchapter V, of Title 11 the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").  *See* ECF No. 1.

2.      The following day, the United States Trustee filed a *Notice of Appointment of Subchapter V Trustee*, appointing Yann Geron, Esq. ("Geron" or the "Subchapter V Trustee") as the Subchapter V Trustee for the Case.

3.      According to the Debtor, its business was serving as an "innovative alternative" auction house that "sold items on behalf of consignors and, once full payment from the winning bidder … had been received and cleared, [] paid the consignor the hammer price less the agreed-upon seller's premium and any applicable fees." *Declaration of Herbert John Saxon, Manager of the Debtor Pursuant to Local Bankruptcy Rule 1007-4* [ECF No. 9] (the "1007 Declaration").

4.      The Debtor is authorized to continue to operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      The Debtor's last filed monthly operating report for the month of September 2025 shows cash on hand of $163,781.55.  *See* ECF No. 71.  As of the date hereof, the Debtor has not

filed its monthly operating report for the months ending October 2025 and November 2025.

6.      On June 30, 2025, the Debtor filed its *Chapter 11 Small Business Subchapter V Plan* (the "Plan"). *See* ECF No. 42.  However, no return date was noticed for solicitation or confirmation of the Plan.

7.      On November 19, 2025, the Debtor filed the Amended Plan [ECF No 74].  No blackline was filed showing changes from the previously filed Plan.  No memorandum of law or affirmation in support of confirmation was filed with the Amended Plan.

8.      Shortly thereafter, on November 26, 2025, this Court entered the *Order Scheduling Hearing on Confirmation of Subchapter V Plan of Reorganization and Fixing Deadlines for Voting to Accept or Reject Plan and Objecting to Plan* [ECF No. 75] (the "Scheduling Order").  Among other things, the Scheduling Order sets forth December 18, 2025, as the confirmation hearing and December 11, 2025, as the date by which ballots must be received by Klestadt Winters Jureller Southard & Stevens, LLP ("KWJSS"), as Debtor's counsel.  However, the Scheduling Order did not set forth a date by which KWJSS must file, *inter alia*, the certification of voting results, affirmation in support of confirmation, and a memorandum in support of confirmation.[1]

9.      Under the Plan, the Debtor proposes to make distributions to creditors and equity-holders from the Debtor's disposable income over a period of 60 months, as follows:[2]

---

[1]  The Scheduling Order also did not set forth a date by which KWJSS must file proof of service of the Solicitation Package (as defined in the Scheduling Order).  However, KWJSS filed a Certificate of Service (the "COS") on December 2, 2025 as to service of the solicitation package of documents.  *See* ECF No. 77.  The Debtor also filed a *Notice of Hearing to Consider Confirmation of the Plan and the Objection Deadline Related Thereto* (the "Notice of Hearing") on November 26, 2025.  *See* ECF No. 76.

[2]  *See* Amended Plan, Art. II, V, VI.  Capitalized terms used here have the definitions given them in the Amended Plan.  For brevity, the Debtor's projections as set forth in Exhibit B, is not reproduced herein.

| Class | Description | Amount | Recovery | Impairment | Entitled to Vote |
|---|---|---|---|---|---|
| Class 1 | Secured Claim of Breakout Capital LLC | $23,435.84 | Paid on or as soon after the Effective Date (without interest) | Impaired | Yes |
| Class 2 | Priority Unsecured Claims | $4,651.87 | Cash in full on 1-year after Effective Date | Unimpaired | No |
| Class 3 | Consignor Claims | $1,136,475.19 | At least 75% over 5 years | Impaired | Yes |
| Class 4 | General Unsecured Claimants | $1,098,655.16 | 5% of Allowed amount on 12/15/2030 | Impaired | Yes |
| Class 5 | All Interests | N/A | | Unimpaired | No |

10.     Article XIII of the Amended Plan sets forth provisions as to Injunctions, Release, and Exculpation, as follows:

13.1  Injunctions.

(a)  Actions Against the Debtor.  Except as otherwise provided in or to enforce the Plan or Confirmation Order, on or after the Effective Date all Entities that have held, currently hold, or may hold, a Claim, Lien, Interest or other liability against or in the Debtor that would be discharged or satisfied upon confirmation of the Plan and the Effective Date but for the provisions of Section 1141(d)(3) of the Code are permanently enjoined from taking any of the following actions on account of such Claim, Lien, Interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim, Lien, Interest, or right against the Debtor, Reorganized Fortuna, their successors, their respective property or any other property that is to be distributed under the Plan or otherwise by the Debtor; or (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtor, Reorganized Fortuna, their successors, their respective property or any other property to be distributed under the Plan or otherwise by the Debtor. On and after the Effective Date, each holder of an Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the Debtor from implementing the Plan or the Confirmation Order.

(b)  Actions Against Any Co-Debtor.  Upon Confirmation of this Plan or any Amended Plan with substantially the same language, the automatic stay of 11 U.S.C. § 362(a) shall extend to any co-debtor (including, but not limited to, Herbert John Saxon) who either (a) personally guaranteed secured, unsecured or leased debt of the Debtor or (b) is asserted by a creditor to be personally liable for an alleged liability of the Debtor, until such time as

4

one of the four following termination provisions occurs: (i) the Chapter 11 case is discharged or dismissed; (ii) the co-debtor leaves the employment of the Debtor; (iii) the plan is in default as to the creditor attempting to exercise its co-debtor guaranty; or (iv) the co-debtor voluntarily waives such protection in writing to any creditor (whichever occurs first). This extension of the automatic stay shall not act as a discharge of any indebtedness still owed by a co-debtor upon the expiration of any of the four (4) termination provisions above.

13.2   Release.  Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date all creditors of, Claim holders against, Interest holders of, and Entities having or claiming an interest of any nature in the Debtor or its estate are hereby permanently enjoined and stayed from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process, or any act against the Debtor, Reorganized Fortuna, their successors, their respective property or any other property that is to be distributed under the Plan, on account of or based upon any right, claim or interest which any such creditor, Claimant, Interest holder, or other Entity or Person may have had prior to the entry of the Confirmation Order.

13.3   Exculpation.  Notwithstanding any other provision of the Plan, neither the Debtor nor its officers, directors, members, employees or other agents, financial advisors, attorneys, accountants or Professionals shall have any liability to any holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Cases, the property to be distributed under the Plan, or any of the transactions contemplated under the Plan, except for liability resulting from conduct constituting gross negligence, willful misconduct or breach of fiduciary duty as determined by a Final Order of the Bankruptcy Court.

**OBJECTIONS**

**A.      The Amended Plan Was Not Properly Noticed And Served**

As an initial matter, the Amended Plan was not properly noticed and served in compliance with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Bankruptcy Rule 3017 governs the procedures for a hearing to confirm a chapter 11 plan and states, in relevant part: "Notice of the time to file an objection to a plan's confirmation and the date of the hearing on confirmation must be *mailed* to creditors and equity security holders in accordance with Rule 2002(b)."  Fed. R. Bankr. P. 3017(d)(2) (emphasis added).  In turn,

5

Bankruptcy Rule 2002(b) mandates a debtor to give the "trustee, all creditors, and all indenture trustees *at least 28 days' notice by mail* of … the time to file an objection to—and the time of the hearing to consider whether to confirm—a Chapter [] 11 plan[.]"  Fed. R. Bankr. P. 2002(b)(2). *See also* Fed. R. Bankr. P. 9006(f).[3]

The COS filed by KWJSS indicates that service of the Amended Plan and related materials was effectuated on November 26, 2025 (the Wednesday before the Thanksgiving holiday weekend no less) by *e-mail* on some 100+ creditors and/or parties in interest, as set forth on Schedules A, B, and C, attached thereto.  Only eight (8) entities, as set forth on Schedules D and E, were served by *first-class mail*.  Even assuming that service upon those parties by e-mail (rather than first-class mail) comports with Bankruptcy Rules 2002 and 3017, the Debtor failed to comply with the 28-day notice period required for a hearing to consider confirmation of the Amended Plan.  Indeed, with an objection deadline and balloting deadline of December 11, 2025,[4] claimholders and parties in interest had a *mere eight (8) business days* to review the Amended Plan and related materials, return a ballot/vote, and/or file any objection to the Amended Plan.

Moreover, the COS shows that Breakout Capital LLC, the sole (secured) claimant in Class 1, and who is entitled to vote on the Amended Plan on account of its impaired claim, was

---

[3]  That rule states:

When a party may or must act within a specified time after being served and service is made by mail or under Fed. R. Civ. P. 5(b)(2)(D) (leaving with the clerk) or (F) (other means consented to), *3 days are added* after the period would otherwise expire under (a).

Fed. R. Bankr. P. 9006(f) (emphasis added).

[4]  The Debtor's Notice of Hearing erroneously disclosed an objection deadline of 4:00pm on December 11, 2025, when the Scheduling Order set the confirmation objection deadline at 5:00pm.

*not* served (by e-mail or first-class mail) with the Amended Plan and related materials, including its ballot. In addition, the parties on Schedule C (by e-mail) and Schedule D (by first-class mail), likewise did not receive any ballots (but received the Amended Plan, Scheduling Order, and Notice of Hearing). No description is given as to who the parties on the COS schedules represent, and why they received (or did not receive) any ballots.

The Debtor cannot proceed to confirmation of the Amended Plan unless and until it serves all parties with complete plan and solicitation materials, and with sufficient notice period, in accordance with the governing Bankruptcy Rules.

**B.** **The Injunctions, Release and Exculpation Provisions Render the Amended Plan Unconfirmable**

As drafted, Article XIII of the Amended Plan contains vague, over-reaching, and improper Injunctions, Release and Exculpation provisions that render the Amended Plan unconfirmable.

*The Injunctions*

Subparagraph (b) of section 13.1 of the Amended Plan provides for an injunction or stay of any actions and claims against "any co-debtor (including, but not limited to, Herbert John Saxon)" until such time as certain termination provisions occur. Mr. Saxon is not *the* Debtor, or even *a* debtor. Indeed, none of the "any co-debtors" described is a debtor. This injunction effectively acts as a non-consensual release by third-party creditors against non-debtor entities (*i.e.*, Mr. Saxon and anyone with a personal guaranty of the Debtor's liabilities). Not only is there zero statutory or legal authority for such an injunction, it was found to be *per se* unlawful by the Supreme Court in *Purdue Pharma, L.P.*, 603 U.S. 204, at 227 (holding that "the bankruptcy code does not authorize a release and injunction that, as part of a plan of

reorganization under Chapter 11, effectively seeks to discharge claims against a non-debtor without the consent of affected claimants."). *See also In re Hal Luftig Co., Inc.*, 657 B.R. 704 (S.D.N.Y. 2024) (reversing Bankruptcy Court's confirmation of a Subchapter V plan that contained non-consensual third-party release of debtor's president and sole shareholder).

Subparagraph (a) of section 13.1 is equally problematic.  Specifically, notwithstanding its title as a permanent injunction, it is in effect, providing a discharge to the Debtor.  However, under section 1192 of the Bankruptcy Code, which governs discharge in a Subchapter V case (*not* section 1143(d)(3)), the Debtor may *not* receive a discharge until the completion of all payments under the Amended Plan, at the conclusion of the 5-year period, where the Amended Plan is non-consensual.  The parties cannot know at present whether the Amended Plan will be confirmed as a cram-down under section 1191(b) and this provision is improper.

### The Release

Section 13.2 of the Amended Plan is titled "Release."  However, upon review, this provision, in actuality, provides for a permanent injunction of actions by holders of claims and interests against the "Debtor, Reorganized Fortuna, their successors, their respective property or any other property that is to be distributed under the [Amended] Plan."  Such language is virtually identical to the injunction in section 13.1(a) of the Amended Plan, which also permanently enjoins holders of claims and interest from taking any actions on account of such claims and interest against "the Debtor, Reorganized Fortuna, their successors, their respective property or any other property to be distributed under the [Amended] Plan…"  In effect, this "Release" is duplicative (of section 13.1), extraneous, and utterly confusing, and should be stricken in its entirely from the Amended Plan.

*The Exculpation*

In its current form, the Exculpation provision in the Amended Plan is vague, overly broad, and improper. First, the Exculpation exceeds the scope of section 1125(e) of the Bankruptcy Code, and seemingly covers not only specific transactions approved the Court, but also any action or omission that arise from or are related to "the Chapter 11 cases."[5]

Second, the Exculpation does not have any temporal limits as to the reach of this already broad protection. Without such a basic temporal scope, the Court would be insulating unknown pre-petition actions and omissions, as well as unknowable prospective actions and omissions. That is neither the intended nor customary use of an exculpation.

Third, the Exculpation language covers a broad range of parties, many of whom are unidentified, and may not have acted as estate fiduciaries nor had any involvement in these bankruptcy proceedings—i.e., "other agents" (what other agents?) and financial advisors (the Debtor did not retain any financial advisors in this Case).

Fourth, the Exculpation Provision fails to provide any carve-out for governmental units and their enforcement and regulatory actions. *See, e.g.*, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 502 (1986) (noting that Congress did not intend debtors to be exempt from regulation and has "repeatedly expressed its legislative determination that the [bankruptcy] trustee is not to have carte blanche to ignore nonbankruptcy law."); *see also* 11 U.S.C. § 362(b). Moreover, the exception for governmental regulatory and police powers continues even after a chapter 11 case ends, and a reorganized debtor emerges. *See In re CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992); *see O'Loghlin v. County of Orange*, 229 F.3d 871, 875 (9th

---

[5] That is clearly residual language from a different plan, since there is only one Debtor here and one Case.

Cir. 2000) ("A suit for illegal conduct occurring after discharge threatens neither the letter nor the spirit of the bankruptcy laws. A 'fresh start' means only that; it does not mean a continuing license to violate the law.").

Lastly, the Exculpation fails to carve out claims based on ethical or professional misconduct. There is no basis in the Bankruptcy Code to exculpate professionals and lawyers from violations of their professional ethics and fiduciary duties to their clients and debtors.

## C.   Other Defects that Render the Amended Plan Patently Unconfirmable

Under section 1191 of the Bankruptcy Code, the Court may confirm a Subchapter V plan "only if all of the requirements of section 1129(a)" are met. 11 U.S.C. § 1191(a). The plan proponent bears the burden of establishing the plan's compliance with each of the required elements by a preponderance of the evidence. *See In re Young Broad. Inc., et al*., 430 B.R. 99, 128 (Bankr. S.D.N.Y. 2010) (citing *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. Ltd., II In re Briscoe Enters., Ltd., II*, 994 F.2d 1160 (5th Cir. 1993), *cert. denied*, 510 U.S. 992 (1993); *In re Charter Commc'ns*, 419 B.R. 221, 243 (Bankr. S.D.N.Y. 2009).

Subsection 1191(b) authorizes the bankruptcy court to "cram down" confirmation of a Subchapter V plan even where paragraphs (8), (10), and (15) of section 1129(a) are not met "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." Further, under subsection (b) "the condition that a plan be fair and equitable with respect to each class of claims or interests," requires, *inter alia*, that as of the effective date of the plan,

(A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that is the first payment is due under the plan will be applied to make payments under the plan; or

(B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

11 U.S.C. § 1191(c)(2).

If the Debtor seeks to cram down confirmation of a non-consensual Amended Plan, the United States Trustee expressly reserves his rights to argue that the requirements under section 1191(b) cannot be met here because the Amended Plan unfairly discriminates as between holders of general unsecured claims that are not classified and the unsecured claims of consignors (i.e., between Class 3 and Class 4).[6]  Moreover, the Amended Plan is *not* fair and equitable with respect to each class of claims or interests in that not all of the Debtor's projected disposable income will be applied to make payments to the general unsecured claimants over the 5-year span of the Amended Plan.  To the contrary, the projections set forth in Exhibit B demonstrate that the Debtor's disposable income is close to $100,000 by the end of year 3 (2028).  Yet, *no* distributions whatsoever will be made to Class 4 general unsecured claimants until the last quarter of the last year of the 5-year Amended Plan.  There is also no justification provided as to the arbitrary 5% that will be repaid to Class 4 claimants at the end of 5-years when the projections show that the Debtors will have more than sufficient disposable income to repay a higher percentage of recovery to the general unsecured creditors.

But even without reaching the issue of a cram-down, the Debtor's current classification and proposed repayment is problematic with respect to Class 2.  That class comprises priority unsecured claims, which consists only of priority tax claims under section 507(a)(8) in the

---

[6]  As of the date of this Objection, KWJSS has not filed its ballot certification, and no date was established in the Scheduling Order as a deadline by which KWJSS must do so.  Thus, the United States Trustee does not know if the Amended Plan will be confirmed as a consensual plan or a cram-down plan.

amount of $4,651.87.  Without any discussion, the Debtor proposes to pay priority taxes, not upon the effective date of the Amended Plan, but on the one-year anniversary of the effective date, without interest.  If so, then those claimants are *impaired* under the Amended Plan, because they are not receiving repayment of their claims in full given the lost time value of money in having to wait one year (December 2026 according to Exhibit B) before receiving distributions.  As impaired creditors, Class 2 claimants are entitled to vote on the Amended Plan and should have been solicited to vote.

### CONCLUSION

WHEREFORE, the United States Trustee respectfully requests that the Court sustain his Objection, deny confirmation of the Amended Plan, and grant such other relief as is just and proper.

Dated:  New York, New York
        December 11, 2025

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, REGION 2

By:    *Annie Wells*
       Annie Wells
       Trial Attorney
       Office of United States Trustee
       Alexander Hamilton Custom House
       One Bowling Green, Room 534
       New York, NY 10004-1408
       Telephone: (212) 510-0500