**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Tracy L. Klestadt
Kevin B. Collins

Hearing Date:
December 18, 2025 at 11:00 a.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>FORTUNA AUCTION LLC,<br><br>                                        Debtor. | Chapter 11<br><br>Case No. 25-10632 (MG)<br><br>Subchapter V |

**DEBTOR'S OMNIBUS REPLY TO OBJECTIONS TO FIRST AMENDED CHAPTER 11**
**(SUBCHAPTER V) PLAN OF REORGANIZATION**

Fortuna Auction, LLC (the "Debtor"), as debtor and debtor-in-possession in the above-referenced Chapter 11 Subchapter V case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby files its omnibus reply ("Reply") to the objections of Anissa Carroll [ECF docket no. 80] and the United Sates Trustee (the "UST") [ECF Docket no. 81] (the "Objections") to the *Debtors' First Amended Chapter 11 (Subchapter V) Plan of Reorganization* ("Plan").[1]  In support of the Reply, the Debtor respectfully submits that each Objection should be overruled, and the Plan confirmed, for the reasons set forth below.

**PRELIMINARY STATEMENT**

1.      Pursuant to the Certification of Ballots filed [ECF Docket No. 82], the First Amended Plan has been accepted by each of the Classes of creditors voting in Classes 1, 3 and 4 of the Plan.  As such, the Debtor seeks to proceed with confirmation of the Plan pursuant to section

---

[1] Capitalized terms shall have the meaning ascribed to them in the Plan.

1191(a) of the Bankruptcy Code and does not seek to invoke the "cram down" provisions of section 1191(b).

2.       The Debtor submits contemporaneously herewith the Declaration of Herbert John Saxon ("Mr. Saxon") [ECF Docket No. 87] ("Saxon Declaration") in further support of confirmation of the Plan.

### A.   Anissa Carroll's and United States Trustee's Objection to Codebtor Injunction Language

3.       Ms. Carroll does not contend that the Plan is infeasible. *See generally* [ECF Doc. No. 80]. She does not contend that it violates section 1191(b) of the Bankruptcy Code's requirement that the Plan not discriminate unfairly and that it be fair and equitable. *See id.* Instead, she solely objects to the injunction provision (the "Third-Party Injunction") contained within the Plan on the basis that it is an "issue of first impression" (which it is not) and has been "significantly questioned and criticized in a recent law review article." *Id.* at 1. In support of her objection, Ms. Carroll raises factual and legal contentions, which are contradicted or flatly unsupported by evidence.

4.       First, Ms. Carroll asserts that to the extent the Third-Party Injunction is permissible, it should not apply to her "claims (and currently pending case in the SDNY)" against Mr. Saxon, the Debtor's principal, because "[d]iscovery in the SDNY case is complete" and only a trial remains if the parties cannot settle their dispute. *Id.* at 3. Ms. Carroll is wrong. Counsel to Mr. Saxon and the Debtor in the currently stayed SDNY matter has informed the undersigned that discovery is far from complete. As such, contrary to Ms. Carroll's belief, and as explained in the Saxon Declaration, absent the Court's approval of this injunction provision, Mr. Saxon would be forced to spend a significant amount of time and resources defending himself in the SDNY

2

litigation, which would substantially distract him from focusing on the reorganization of the Debtor's business at a time when his undivided attention to the business is most crucial.

5. Moreover, Mr. Saxon personally guaranteed a number of transactions the Debtor entered into with certain merchant cash advance ("MCA") parties. As the Court is aware, the Debtor successfully resolved the claims of those MCAs which filed proofs of claim in this Court, and in each of those instances, the MCAs waived their claims against Mr. Saxon. However, there were a number of MCAs that did not file proofs of claim in the case. At least one party has obtained a default judgment against Mr. Saxon. Each of those MCAs were served with the Plan and notice of the confirmation hearing, and none have objected to the Third-Party Injunction being issued. As discussed in the Saxon Declaration, precluding these parties from enforcing their codebtor claims against Mr. Saxon is crucial to the success to the Plan.

6. In that regard, as the Second Circuit recognized in *Queenie, Ltd. v. Nygard Int'l.*, 321 F.3d 282 (2d Cir. 2003), the Bankruptcy Court, pursuant to its equitable powers, may extend the automatic stay to a non-debtor "where a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate," such as in "actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *Queenie, Ltd.*, 321 F.3d at 287–88 (internal quotations omitted). Here, as set forth in the Saxon Declaration, Mr. Saxon is critical to the success of the Debtor's business as he has been the primary driver of the Debtor's operations, strategy, revenue generation, and growth since the inception of the business. *See* Saxon Declaration at ¶ 5. Furthermore, Mr. Saxon states that in order "[t]o meet the Plan's obligations, he must remain deeply engaged in rebuilding revenue, restoring confidence among consignors and bidders, and executing the business strategy necessary to generate the cash flow required to pay creditors." *See id.* at ¶ 11.

7.      Ms. Carroll, for her part, has failed to set forth any evidence contradicting the Saxon Declaration, nor could she.  In short, the Debtor has provided sufficient evidence that, without the injunction provision, the Debtor's ability to comply with making payments to creditors as currently set forth in the Plan would be substantially impacted if Mr. Saxon is forced to defend himself – and other pending and potential codebtor litigation – from litigation and collection efforts against him.

8.      Second, the Debtor has filed an objection to Ms. Carroll's proof of claim (assigned claim no. 49 by the Clerk of the Court) with the Court on December 10, 2025.  [ECF Doc. No. 78]. No determination has been made as to the Debtor's liability for the claim based on alleged violations by the Debtor of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  To the extent Ms. Carroll avers that Mr. Saxon is personally liable for FLSA and NYLL violations, Mr. Saxon denies such personal liability.

9.      The UST has raised a similar objection, arguing that the Third-Party Injunction provision is impermissible because it operates as a "disguised non-consensual, non-debtor third-party release" allegedly prohibited under *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024). *See* [ECF Doc No. 81 at 7-8].  That is also incorrect.

10.     *In re Hal Luftig Co.*, 667 B.R. 638 (Bankr. S.D.N.Y. 2025) is instructive and persuasive on this point.  There, Judge Mastando III recognized that the Supreme Court held in *Purdue Pharma L.P.* that "non-consensual third party releases are not authorized by the Bankruptcy Code."  *Id.* at 658 (citing *Purdue Pharma*, 603 U.S. at 204 ("The bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seek[s] to discharge claims against a nondebtor without the consent of affected claimants.").  However, Judge Mastando III correctly noted that "[t]he Supreme Court did *not*

4

address the bankruptcy courts' authority to grant non-consensual third party automatic stay extensions in *Purdue Pharma.*" *Id.* (emphasis added). Against that backdrop, he concluded that the non-debtor stay extension at issue was permissible for the life of the plan in light of the evidence before the Court demonstrating that most of the debtor's business was generated through the non-debtor's efforts and that the debtor's reorganization depended on the non-debtor's ability to obtain new opportunities for the company. *Id.* at 660. Here, as set forth above, the same evidence exists. *See* Saxon Declaration.

11.     The relief sought is an injunction, not a release. As discussed below, the Debtor has included in the Second Amended Plan (defined below), filed contemporaneously herewith, language clarifying that any statute of limitations which may have expired after the Petition Date is preserved. Claims against Mr. Saxon survive, but enforcement against Mr. Saxon is stayed during the life of the Plan. As such, the Court should overrule Ms. Carroll's and the UST's Objection to the Third-Party Injunction provision.

**B. Other Objections Of The United States Trustee To Debtor's First Amended Chapter 11 (Subchapter V) Plan Of Reorganization**

12.     In light of the various additional arguments raised by the UST, and for the sake of brevity, the Debtor respectfully summarizes the UST's arguments and the Debtor's responses in a chart for the Court's consideration. To the extent that the USTs objection was founded on the premise that the Debtor would seek a "cram down" of the Plan pursuant to section 1191(b), those arguments are moot. The Debtor has filed a Second Amended Plan of Reorganization, [ECF Docket No. 86] ("Second Amended Plan") which addresses several of the UST's objection points, as follows:

| UST'S ARGUMENTS | DEBTOR'S REPLY |
|---|---|
| a) The UST contends that notice and service of the Plan was procedurally | **This Court's Scheduling Order scheduled the dates utilized herein and provided that** |

| | | |
|---|---|---|
| | improper under Bankruptcy Rules 2002 and 3017. The UST argues that service of paper documents by first class mail is required and that insufficient time was given to the parties to vote on the Plan. | **"service by either (i) e-mail where e-mail addresses are available, or (ii) first class mail, of the Plan" is proper.** *See* **[ECF Doc. No. 75 at 2]. As such, the Debtor complied with this Court's Order.** <br><br> **Moreover, as explained in the Saxon Declaration, email is and always has been the Debtor's principal means of communication with the parties in this case.** *See* **Saxon Declaration at ¶ 5.** <br><br> **In fact, the number of ballots received – 28 in total – demonstrates that service was proper as the parties received the Solicitation Package and were then able to make an informed decision to either accept or reject the Plan.** <br><br> **The UST's argument on this point fails.** |
| b) | UST asserts Class 1 creditor – Breakout Capital LLC – was not properly served. | **This argument is moot. Breakout was served, and received and returned a ballot voting for the Plan.** |
| c) | Subparagraph (a) of section 13.1 of the Plan, which provides for a permanent injunction against the Debtor, effectively provides a discharge to the Debtor in violation of section 1192 of the Bankruptcy Code, which provides that a debtor may not receive a discharge until the completion of all payments under the plan where the plan is non-consensual. The parties do not know whether the Plan will be confirmed as a cram-down and this provision is improper. | **This argument is moot, as the Debtor will not be proceeding under section 1191(b).** |
| d) | Section 13.2 of the Plan, titled as a "Release," is duplicative of Section 13.1 and is, therefore, extraneous and confusing and should be stricken. | **Resolved. The Second Amended Plan has deleted section 13.2.** |
| e) | Section 13.3 of the Plan, which contains the Exculpation provision, is vague, overly broad, and improper. | **Resolved. The Second Amended Plan has been amended to address each of the points raised by the UST.** |

6

| | |
|---|---|
| First, it exceeds the scope of section 1125(e).<br><br>Second, there are no temporal limits as to the reach of this provision.<br><br>Third, it covers a broad range of parties, many of whom are unidentified and may have no connection to the Chapter 11 Case.<br><br>Fourth, the provision fails to provide a carve-out for governmental units and their enforcement and regulatory actions.<br><br>Fifth, the provision fails to carve out claims based on ethical or professional misconduct. | |
| f) There is no basis for the Debtor to treat section 507 priority tax claims (the Class 2 Claimants under the Plan) as unimpaired when they are not being paid in full upon the effective date of the Plan. The Plan proposes to pay them on the one-year anniversary of the Plan's Effective Date, without consideration of interest and the "lost time value of money in having to wait one year." | **Resolved.  The Second Amended Plan has been amended to provide for payment on the Effective Date or as soon as such claim becomes an Allowed Claim.** |

For the foregoing reasons, the Court should overrule the UST's Objection.

**WHEREFORE**, the Debtor respectfully requests that the Court overrule the Objections, confirm Plan (as amended in the Second Amended Plan), and grant such other and further relief as the Court may deem just and appropriate.

Dated:   New York, New York
              December 15, 2025

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   */s/ Tracy L. Klestadt*
        Tracy L. Klestadt
        Kevin B. Collins
        200 West 41st Street, 17th Floor
        New York, New York 10036

Tel: (212) 972-3000
Fax: (212) 972-2245
Email:  tklestadt@klestadt.com
        kcollins@klestadt.com

*Counsel to the Debtor*
*and Debtor-in-Possession*