**UNITED STATES BANKRUPTCY COURT**
<u>**SOUTHERN DISTRICT OF NEW YORK**</u>

In re:

FORTUNA AUCTION LLC,

Debtor.

**NOT FOR PUBLICATION**

Case No. 25-10632 (MG)

Chapter 11

**MEMORANDUM OPINION GRANTING DEBTOR'S MOTION TO CONFIRM**
<u>**CHAPTER 11 PLAN**</u>

*A P P E A R A N C E S :*

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
*Counsel to Debtor and Debtor in Possession*
200 West 41st Street, 17th Floor
New York, NY 10036-7203
By:    Tracy L. Klestadt, Esq.
         Kevin B. Collins, Esq.

BRAVERMAN, PLLC
*Counsel to Anissa Carrol*
19 West 44th Street
New York, NY 10036
By:    Daniel S. Braverman, Esq.
         Peter V. Marchetti, Esq.
         Sean H. Higgins, Esq.
         Uzoma A. Eze, Esq.

WILLIAM K. HARRINGTON
*UNITED STATES TRUSTEE, REGION 2*
Office of United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408
By:    Annie Wells, Esq.

YANN GERON
*Sub-Chapter V Trustee*
Geron Legal Advisors LLC
370 Lexington Avenue
Suite 1208
New York, NY 10017
By:    Yann Geron, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the *Second Amended Chapter 11 (Subchapter V) Plan of Reorganization* (the "Second Amended Plan," or the "Plan," ECF Doc. # 86) of Fortuna Auction LLC (the "Debtor"), filed on December 15, 2025. Attached to the Second Amended Plan are (i) a liquidation analysis (the "Liquidation Analysis," *Id.* Ex. A), (ii) financial projections (the "Projections," *Id.* Ex. B), and list of allowed claims (*Id.* Ex. C).

The Debtor filed the Second Amended Plan after soliciting votes on the first amended plan (the "First Amended Plan," ECF Doc. # 74). The First Amended Plan was filed November 19, 2025. Objections to the First Amended Plan were due December 11, 2025 at 4:00 p.m. (*Notice of Hearing to Consider Confirmation of the Plan and the Objection Deadline Related Thereto*, the "Confirmation Hearing Notice," ECF Doc. # 76.) The First Amended Plan notes that as a small business, "the Court has conditionally found that this plan provides adequate information as required under 11 U.S.C § 1125 (a)(1)." (First Amended Plan at i.) As a result, the Debtor distributed this plan without filing a disclosure statement. The First Amended Plan additionally notes, "[i]f a party in interest filed an objection to this plan based on a lack of adequate information, the Court shall make a finding regarding compliance with 11 U.S.C § 1125 (a)(1) at or before the hearing on confirmation of the plan." (First Amended Plan at i.) No objections were filed based on a lack of adequate information.

The Confirmation Hearing Notice established April 1, 2025 as the record date (the "Record Date") for determining the Holders of Claims and Interest entitled to vote on the Plan and a voting deadline (the "Voting Deadline") of December 11, 2025. (Confirmation Hearing Notice ¶¶ 5-6.) The Confirmation Hearing Notice, which was included in the Debtor's solicitation materials, also included certain release, in junction, and exculpation provisions that

were in the First Amended Plan. (*Id.* at ¶ 7.) On December 12, 2025, the Debtor filed a declaration regarding voting on and tabulation of ballots accepting and rejecting the First Amended Plan (the "Voting Declaration," ECF Doc. # 82).

The United States Trustee (the "UST") filed an objection (the "UST Objection," ECF Doc. # 81) and Anissa Caroll filed an objection (the "Caroll Objection," ECF Doc. # 80), both of which (together, "the Objections") are summarized in Part II of this Opinion.

On December 15, 2025, the Debtor filed the Second Amended Plan with a contemporaneous redline against the First Amended Plan (the "Redline," ECF Doc. # 86-1). The Debtor also filed a declaration of its founder and Chief Executive Officer, Herbert John Saxon ("Mr. Saxon") in support of entry of an order confirming the Second Amended Plan (the "Saxon Declaration," ECF Doc. # 87) and an omnibus reply to the Objections to the First Amended Plan. (The "Reply," ECF Doc. #88.)

The Court determines below, largely based on the overwhelming acceptance of the Plan by all impaired creditor classes, that the Plan should be **CONFIRMED.**

# I.    BACKGROUND

## A.  Case Background

On April 1, 2025 (the "Petition Date"), the Debtor filed a voluntary petition (the "Petition," ECF Doc. # 1) for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code. (Second Amended Plan at 3.) On April 2, 2025, the United States Trustee filed the *Notice of Appointment of Subchapter V Trustee* (ECF Doc. # 8), appointing Yann Geron as Subchapter V Trustee to oversee the Debtor's Chapter 11 Case. (*Id.*)

The Debtor's business is an auction service that "sold items on behalf of consignors and, once full payment from the winning bidder—including both the hammer price and buyer's

premium—had been received and cleared, it paid the consignor the hammer price less the agreed-upon seller's premium and any applicable fees." (Second Amended Plan at 1.) Internal personnel conflicts, COVID-19's disruption of the luxury auction industry, and a series of problematic lending arrangements led to the Debtor commencing Chapter 11 proceedings. (*Id.* at 1-3.) The Debtor resumed conducting auctions on April 24, 2025. (*Id.*) Since the Petition Date, the Debtor has successfully conducted twelve auctions, selling over 502 lots/items. (*Id.*) All postpetition claims of consignor parties have been paid on a current basis. (*Id.*)

### B. Overview of the First Amended Plan[1]

#### 1. Proposed Classification of Claims and Interests[2]

The First Amended Plan specifies five classes of claims. (Plan ¶ 2.1.) A summary of the classes is below:

| Claims/Interests & Description | Estimated Allowed Claims | Treatment | Estimated Recovery |
|---|---|---|---|
| **Administrative Claims (unclassified)** | Approximately $93,925.96 | Unimpaired — Deemed to Accept | Estimated Recovery Percentage: 100% Form of Recovery: Cash |
| **Priority Tax Claims (unclassified)** | Approximately $15,841.98 | Unimpaired — Deemed to Accept | Estimated Recovery Percentage: 100% Form of Recovery: Cash |
| **Allowed Secured Claim of Breakout Capital LLC (Class 1)** | $23,435.64 | Impaired — Entitled to Vote | Estimated Recovery Percentage: 100% To be paid on or before March 31, 2026 Form of Recovery: Cash |
| **Allowed Priority Unsecured Claims (Class 2)** | $0 | Unimpaired – Not entitled to vote | Estimated Recovery Percentage: 100% Form of Recovery: Cash |
| **Allowed Consignor Customer Claims (Class 3)** | $1,136,475.19 | Impaired – Entitled to Vote | 75% of Allowed Claim Amount, to be paid on an annual basis commencing on or before December 15, 2026 (the First Distribution Date) in accordance with the |

---

[1] The First Amended Plan is the plan that was voted on.
[2] There were no changes to claim classifications between the First Amended and Second Amended Plans.

| | | | Debtor's Disposable Income projections, plus any Excess Disposable Income as may be available. Form of Recovery: Cash |
|---|---|---|---|
| **General Unsecured Claims (Class 4)** | Total amount of claims asserted: $1,098,655.16 | Impaired — Entitled to Vote | To be paid on or about December 15, 2030. Estimated Recovery Percentage: 5% Form of Recovery: Cash |
| **Equity Interests (Class 5)** | N/A | Unimpaired — Deemed to Accept | Maintain existing Equity Interest. |

(Notice of Hearing ¶ 4.)

        2.  <u>Voting Results for the First Amended Plan</u>

The firm Kledstadt Winters Jureller Southard & Stevens, LLP ("KWJSS") assisted in the solicitation and tabulation of ballots in this case.  Pursuant to the First Amended Plan, the holders of the following Claims as of the Record Date were entitled to vote:

| Class | Description | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Class 1 consists of the Claim of Breakout Capital LLC | Impaired | Yes |
| Class 2 | Class 2 consists of all Priority Unsecured Claims | Unimpaired | No |
| Class 3 | Class 3 consists of all Consignor Claims | Impaired | Yes |
| Class 4 | Class 4 consists of all General Unsecured Claims not otherwise classified herein | Impaired | Yes |
| Class 5 | Class 5 consists of all Interests | Unimpaired | No |

(Plan ¶ 5.3.)

On November 26, 2025, KWJSS served (i) the First Amended Plan (ii) the Order Scheduling a Hearing on Plan Confirmation, (iii) the Confirmation Hearing Notice, (iv) the ballot to accept or reject the First Amended Plan (the "Ballot"), and (v) notice filing of a 9019 Motion to the parties listed in the creditor matrix and all other parties entitled to receive such notice. (Certificate of Service, ECF Doc. # 77.)

The Voting Declaration included a summary of the voting for each class attached as Exhibit A and the final tabulation of votes attached as Exhibit B. The voting breakdown is as follows:

| Voting Class | Accept | | Reject | |
|---|---|---|---|---|
| | Amount | Number | Amount | Number |
| Class 1 (1 Ballot Counted) | $23,435.84 | 1 | $0.00 | 0 |
| Percentage | 100% | | 0% | |
| Class 3 (20 Ballots Counted) | $365,057.75 | 20 | $24,227.50 | 5 |
| Percentage | 80% | | 20% | |
| Class 4 (2 Ballots Counted) | $2,897.51 | 2 | $0.00 | 0 |
| Percentage | 100% | | 0% | |

(Voting Declaration Ex. A.)

This voting breakdown shows that impaired creditors voted overwhelmingly to accept the First Amended Plan.  None of the voters filed an objection to the First Amended Plan.

**C.  Overview of the Modified Plan and Revisions Made to Solicitation Version**

1.  The First Amended Plan

The First Amended Plan includes the following regarding injunctions, release, and exculpation:

13.1 Injunctions.

(a) Actions Against the Debtor. Except as otherwise provided in or to enforce the Plan or Confirmation Order, on or after the Effective Date all Entities that have held, currently hold, or may hold, a Claim, Lien, Interest or other liability against or in the Debtor that would be discharged or satisfied upon confirmation of the Plan and the Effective Date but for the provisions of Section 1141(d)(3) of the Code are permanently enjoined from taking any of the following actions on account of such Claim, Lien, Interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim, Lien, Interest, or right against the Debtor, Reorganized Fortuna, their successors, their respective property or any

other property that is to be distributed under the Plan or otherwise by the Debtor; or (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtor, Reorganized Fortuna, their successors, their respective property or any other property to be distributed under the Plan or otherwise by the Debtor. On and after the Effective Date, each holder of an Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the Debtor from implementing the Plan or the Confirmation Order.

(b) Against Any Co-Debtor. Upon Confirmation of this Plan or any Amended Plan with substantially the same language, the automatic stay of 11 U.S.C. § 362(a) shall extend to any co-debtor (including, but not limited to, Herbert John Saxon) who either (a) personally guaranteed secured, unsecured or leased debt of the Debtor or (b) is asserted by a creditor to be personally liable for an alleged liability of the Debtor, until such time as one of the four following termination provisions occurs: (i) the Chapter 11 case is discharged or dismissed; (ii) the co-debtor leaves the employment of the Debtor; (iii) the plan is in default as to the creditor attempting to exercise its co-debtor guaranty; or (iv) the co-debtor voluntarily waives such protection in writing to any creditor (whichever occurs first). This extension of the automatic stay shall not act as a discharge of any indebtedness still owed by a co-debtor upon the expiration of any of the four (4) termination provisions above.

13.2 Release. Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date all creditors of, Claim holders against, Interest holders of, and Entities having or claiming an interest of any nature in the Debtor or its estate are hereby permanently enjoined and stayed from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process, or any act against the Debtor, Reorganized Fortuna, their successors, their respective property or any other property that is to be distributed under the Plan, on account of or based upon any right, claim or interest which any such creditor, Claimant, Interest holder, or other Entity or Person may have had prior to the entry of the Confirmation Order.

13.3 Exculpation. Notwithstanding any other provision of the Plan, neither the Debtor nor its officers, directors, members, employees or other agents, financial advisors, attorneys, accountants or Professionals shall have any liability to any holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Cases, the property to be distributed under the Plan, or any of the transactions contemplated under the Plan, except for liability resulting from conduct constituting gross negligence, willful misconduct or breach of fiduciary duty as determined by a Final Order of the Bankruptcy Court.

(First Amended Plan ¶¶ 13.1-13.3.)

2.  <u>The Second Amended Plan</u>

The Second Amended Plan added certain language to the end of 13.1(b), removed section

13.2 about releases, and added clarifying language to the end of section 13.3 about exculpation.

(Redline.)

Section 13.1 Injunctions

(a) Actions Against the Debtor. Except as otherwise provided in or to enforce the Plan or Confirmation Order, on or after the Effective Date all Entities that have held, currently hold, or may hold, a Claim, Lien, Interest or other liability against or in the Debtor that would be discharged or satisfied upon confirmation of the Plan and the Effective Date but for the provisions of Section 1141(d)(3) of the Code are permanently enjoined from taking any of the following actions on account of such Claim, Lien, Interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim, Lien, Interest, or right against the Debtor, Reorganized Fortuna, their successors, their respective property or any other property that is to be distributed under the Plan or otherwise by the Debtor; or (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against the Debtor, Reorganized Fortuna, their successors, their respective property or any other property to be distributed under the Plan or otherwise by the Debtor. On and after the Effective Date, each holder of an Interest in the Debtor is permanently enjoined from taking or participating in any action that would interfere with or otherwise hinder the Debtor from implementing the Plan or the Confirmation Order.

(b) Against Any Co-Debtor. Upon Confirmation of this Plan or any Amended Plan with substantially the same language, the automatic stay of 11 U.S.C. § 362(a) shall extend to any co-debtor (including, but not limited to, Herbert John Saxon) who either (a) personally guaranteed secured, unsecured or leased debt of the Debtor or (b) is asserted by a creditor to be personally liable for an alleged liability of the Debtor, until such time as one of the four following termination provisions occurs: (i) the Chapter 11 case is discharged or dismissed; (ii) the co-debtor leaves the employment of the Debtor; (iii) the plan is in default as to the creditor attempting to exercise its co-debtor guaranty; or (iv) the co-debtor voluntarily waives such protection in writing to any creditor (whichever occurs first). This extension of the automatic stay shall not act as a discharge of any indebtedness still owed by a co-debtor upon the expiration of any of the four (4) termination provisions above. Any applicable statute of limitations that may have expired after the Petition Date is tolled to, through and including the fifth anniversary of the Effective Date of the Plan; provided, however, that no statute of limitations that may have expired prior to the Petition date shall be deemed to have been revived or extended by virtue this Plan of the entry of the Confirmation Order.

**13.2 [Reserved]**

13.3 Exculpation.  Notwithstanding any other provision of the Plan, and to the extent permitted under section 1125 of the Bankruptcy Code, neither the Debtor nor its officers, directors, members, employees, attorneys, accountants or Professionals (solely in such capacities as estate fiduciaries), shall have any liability to any holder of any Claim or Interest for any act or omission occurring on or after the Petition Date to the Effective Date, in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Cases, the property to be distributed under the Plan, or any of the transactions contemplated under the Plan, except for liability resulting from conduct constituting gross negligence, willful misconduct, violation of professional ethics or fiduciary duties of any Professional (including claims under Rule 1.8(h)(1) of the New York Rules of Professional Conduct, or breach of fiduciary duty as determined by a Final Order of a court of competent jurisdiction; provided, however, that the provisions of the foregoing paragraph shall not apply to any governmental units or their criminal enforcement and regulatory actions.

(Second Amended Plan ¶¶ 13.1-13.3.)

### D.  Resolicitation

Looking at the revisions to the First Amended Plan made for the Second Amended Plan, they do not appear to substantively affect, change, or alter the implementation of the Plan. (Redline.)  The revisions consist of adding clarifying language to the injunctions section, removing the releases section entirely, and adding additional clarifying language around the exculpation section to address the objections of the UST and Caroll on the road to Confirmation. (*Id.*)  Therefore, the Debtor **DOES NOT NEED TO** resolicit the Second Amended Plan, as the revisions made do not alter the substance of the First Amended Plan.

### E.  Means for Implementation

The Second Amended Plan is premised upon the Debtor's continuing operations. (Second Amended Plan ¶ 10.1.)  The Debtor's disposable income will be used to fund payments to creditors pursuant to the Plan.  (*Id.*)

## II.   OBJECTIONS

### A.  The Carroll Objection

Anissa Carroll is a former employee of the Debtor who prior to the Petition Date, on or about August 21, 2023, brought a civil action in SDNY against the Debtor and Mr. Saxon for violations of the Fair Labor Standards Act and related regulations.  (Caroll Objection ¶ 2.) Carroll asserts that the discovery process is complete.  (*Id.* ¶ 3.)  On May 29, 2025, Carroll filed a claim (Claim No. 49) in the Chapter 11 proceedings in the amount of $252, 685.80 stemming from:

1. Total Unpaid Overtime Wages, including liquidated damages, for the period from February 18, 2019, to July 3, 2021, amounting to $26,692.30.
2. Total Unpaid Commissions, including liquidated damages, for the same period, amounting to $112,186.00.
3. NYLL § 198 damages amounting to $10,000.00. 25-10632-mg Doc 78 Filed 12/10/25 Entered 12/10/25 17:02:03 Main Document Pg 3 of 12 4
4. Filing Fee(s) amounting to $402.00.
5. Service Fee(s) amounting to $603.05.
6. Prejudgment Interest through the Petition Date amounting to $30,802.45.
**7.** (7) Attorney's Fees through the Petition Date amounting to $72,000.00.

Claim No. 49-2 at 1.

On December 10, 2025, the Debtor filed an objection to Claim No. 49.  (the "Debtor's Claim Objection," ECF Doc # 78).

Anissa Caroll filed an objection to the confirmation of the First Amended Plan specifically objecting to the injunction "which enjoins any party from bringing an action against any one of the debtor's principals, including, without limitation, Herbert John Saxon, for a five-year period (i.e. the life of the plan)."  (Carroll Objection at 1.)  Carroll states that:

"[a]lthough framed as an injunction, the Third-Party injunction contained in the First Amended Plan essentially acts as an impermissible non-consensual third-party release."  (*Id.* ¶ 5.)  Caroll additionally noted that the First Amended Plan "does not contain a tolling of the statue of limitations of Ms. Carroll's claims against Mr. Saxon (or others) during the period of the injunction. Moreover, the First Amended Plan does not (i) require Mr. Saxon to make any sword statement under oath

10

regarding: (a) the state of his current assets; and (b) a list of all transfers (i.e.) otherwise avoidable transfers) he made within the last two to four years; (ii) restrict Mr. Saxon' ability to transfer his personal assets; and (iii) require period reporting by Mr. Saxon of his personal financial affairs/assets/transfers, etc."

(*Id.* ¶ 6.)

Carroll states that "the Third-Party Injunction essentially gives Mr. Saxon the benefit of filing for personal bankruptcy without the usual disclosure burden associated with filing. . ." (*Id.* ¶ 7.)

### B. The UST Objection

The UST objected on the grounds that:

1) The First Amended Pan was not properly noticed and served:

[t]he COS filed by KWJSS indicates that service of the Amended Plan and related materials was effectuated on November 26, 2025 (the Wednesday before the Thanksgiving holiday weekend no less) by e-mail on some 100+ creditors and/or parties in interest, as set forth on Schedules A, B, and C, attached thereto. Only eight (8) entities, as set forth on Schedules D and E, were served by first-class mail. Even assuming that service upon those parties by e-mail (rather than first-class mail) comports with Bankruptcy Rules 2002 and 3017, the Debtor failed to comply with the 28-day notice period required for a hearing to consider confirmation of the Amended Plan. Indeed, with an objection deadline and balloting deadline of December 11, 2025,4 claimholders and parties in interest had a mere eight (8) business days to review the Amended Plan and related materials, return a ballot/vote, and/or file any objection to the Amended Plan.

Moreover, the COS shows that Breakout Capital LLC, the sole (secured) claimant in Class 1, and who is entitled to vote on the Amended Plan on account of its impaired claim, was not served (by e-mail or first-class mail) with the Amended Plan and related materials, including its ballot. In addition, the parties on Schedule C (by e-mail) and Schedule D (by first-class mail), likewise did not receive any ballots (but received the Amended Plan, Scheduling Order, and Notice of Hearing). No description is given as to who the parties on the COS schedules represent, and why they received (or did not receive) any ballots.

2) The injunctions release and exculpation provisions render the First Amended Plan unconfirmable.

The UST states that these provisions are "vague, over-reaching, and improper":

The Injunctions Subparagraph (b) of section 13.1 of the Amended Plan provides for an injunction or stay of any actions and claims against "any co-debtor (including, but not limited to, Herbert John Saxon)" until such time as certain

termination provisions occur. Mr. Saxon is not the Debtor, or even a debtor. Indeed, none of the "any co-debtors" described is a debtor. This injunction effectively acts as a non-consensual release by third-party creditors against non-debtor entities (i.e., Mr. Saxon and anyone with a personal guaranty of the Debtor's liabilities). Not only is there zero statutory or legal authority for such an injunction, it was found to be per se unlawful by the Supreme Court in Purdue Pharma, L.P., 603 U.S. 204, at 227 (holding that "the bankruptcy code does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a non-debtor without the consent of affected claimants."). See also In re Hal Luftig Co., Inc., 657 B.R. 704 (S.D.N.Y. 2024) (reversing Bankruptcy Court's confirmation of a Subchapter V plan that contained non-consensual third-party release of debtor's president and sole shareholder). Subparagraph (a) of section 13.1 is equally problematic. Specifically, notwithstanding its title as a permanent injunction, it is in effect, providing a discharge to the Debtor. However, under section 1192 of the Bankruptcy Code, which governs discharge in a Subchapter V case (not section 1143(d)(3)), the Debtor may not receive a discharge until the completion of all payments under the Amended Plan, at the conclusion of the 5-year period, where the Amended Plan is non-consensual. The parties cannot know at present whether the Amended Plan will be confirmed as a cram-down under section 1191(b) and this provision is improper.

The Release Section 13.2 of the Amended Plan is titled "Release." However, upon review, this provision, in actuality, provides for a permanent injunction of actions by holders of claims and interests against the "Debtor, Reorganized Fortuna, their successors, their respective property or any other property that is to be distributed under the [Amended] Plan." Such language is virtually identical to the injunction in section 13.1(a) of the Amended Plan, which also permanently enjoins holders of claims and interest from taking any actions on account of such claims and interest against "the Debtor, Reorganized Fortuna, their successors, their respective property or any other property to be distributed under the [Amended] Plan…" In effect, this "Release" is duplicative (of section 13.1), extraneous, and utterly confusing, and should be stricken in its entirely from the Amended Plan.

The Exculpation In its current form, the Exculpation provision in the Amended Plan is vague, overly broad, and improper. First, the Exculpation exceeds the scope of section 1125(e) of the Bankruptcy Code, and seemingly covers not only specific transactions approved the Court, but also any action or omission that arise from or are related to "the Chapter 11 cases."5 Second, the Exculpation does not have any temporal limits as to the reach of this already broad protection. Without such a basic temporal scope, the Court would be insulating unknown pre-petition actions and omissions, as well as unknowable prospective actions and omissions. That is neither the intended nor customary use of an exculpation. Third, the Exculpation language covers a broad range of parties, many of whom are unidentified, and may not have acted as estate fiduciaries nor had any involvement in these bankruptcy proceedings—i.e., "other agents" (what other agents?) and financial advisors (the Debtor did not retain any financial advisors in this Case).

Fourth, the Exculpation Provision fails to provide any carve-out for governmental units and their enforcement and regulatory actions. See, e.g., Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 502 (1986) (noting that Congress did not intend debtors to be exempt from regulation and has "repeatedly expressed its legislative determination that the [bankruptcy] trustee is not to have carte blanche to ignore nonbankruptcy law."); see also 11 U.S.C. § 362(b). Moreover, the exception for governmental regulatory and police powers continues even after a chapter 11 case ends, and a reorganized debtor emerges. See In re CMC Heartland Partners, 966 F.2d 1143, 1146 (7th Cir. 1992); see O'Loghlin v. County of Orange, 229 F.3d 871, 875 (9th Cir. 2000) ("A suit for illegal conduct occurring after discharge threatens neither the letter nor the spirit of the bankruptcy laws. A 'fresh start' means only that; it does not mean a continuing license to violate the law."). Lastly, the Exculpation fails to carve out claims based on ethical or professional misconduct. There is no basis in the Bankruptcy Code to exculpate professionals and lawyers from violations of their professional ethics and fiduciary duties to their clients and debtors.

3) There are other defects that render the First Amended Plan patently unconfirmable. (The UST Objection at 5-7.

**C. The Debtor's Omnibus Reply**

    1. <u>The Injunction Provision</u>

On December 15, 2025, the Debtor filed a Reply to the Objections. The Debtor notes that Carroll "solely objects to the injunction provision." (*Id.* ¶ 3.) The Debtor counters Carroll's assertion that discovery is complete, saying that it is "far from complete," so that "absent the Court's approval of this injunction provision, Mr. Saxon would be forced to spend a significant amount of time and resources defending himself in the SDNY litigation, which would substantially distract him from focusing on the reorganization of the Debtor's business at a time when his undivided attention to the business is most crucial." (*Id.* ¶ 4.) The Debtor further notes that Mr. Saxon "personally guaranteed a number of transactions the Debtor entered into with certain merchant cash advance." (*Id.* ¶ 5.) While those that filed proofs of claim have since waived claims against Mr. Saxon, there were a number that did not file proofs of claim in the case. (*Id.*) These parties were served with the Plan and notice of the confirmation hearing, and none have objected to the third-party injunction. (*Id.*) The Debtor asserts that "precluding these

parties from enforcing their codebtor claims against Mr. Saxon is crucial to the success to the

Plan."

The Debtor additionally highlights the Debtor's Claim Objection noting that "[n]o

determination has been made as to the Debtor's liability for the claim based on alleged violations

by the Debtor of the Fair Labor Standards Act."  (Reply ¶ 8.)

The Debtor asserts that the UST's claim that the injunction provision operates as a

"disguised non-consensual, non-debtor third-party release" prohibited under *Purdue* is incorrect.

> *In re Hal Luftig Co.*, 667 B.R. 638 (Bankr. S.D.N.Y. 2025) is instructive and
> persuasive on this point. There, Judge Mastando III recognized that the Supreme
> Court held in *Purdue Pharma L.P.* that "non-consensual third party releases are not
> authorized by the Bankruptcy Code." Id. at 658 (citing *Purdue Pharma*, 603 U.S.
> at 204 ("The bankruptcy code does not authorize a release and injunction that, as
> part of a plan of reorganization under Chapter 11, effectively seek[s] to discharge
> claims against a nondebtor without the consent of affected claimants."). However,
> Judge Mastando III correctly noted that "[t]he Supreme Court did *not* address the
> bankruptcy courts' authority to grant non-consensual third party automatic stay
> extensions in *Purdue Pharma*." *Id.* (emphasis added). Against that backdrop, he
> concluded that the non-debtor stay extension at issue was permissible for the life of
> the plan in light of the evidence before the Court demonstrating that most of the
> debtor's business was generated through the non-debtor's efforts and that the
> debtor's reorganization depended on the non-debtor's ability to obtain new
> opportunities for the company. *Id.* at 660. Here, as set forth above, the same
> evidence exists. *See* Saxon Declaration.

(Reply ¶ 10.)

The Debtor asserts that they seek an "inunction, not a release" and that the Second

Amended Plan added "language clarifying that any statute of limitations which may have

expired after the Petition Date is preserved.  Claims against Mr. Saxon survive, but

enforcement against Mr. Saxon is stayed during the life of the Plan."  (*Id.* ¶ 11.)

2.  Additional UST Objections

The Debtor summarized the US Trustee's arguments and Debtor's responses below:

| UST Arguments | Debtor's Reply |
|---|---|
| The UST contends that notice and service of the Plan was procedurally improper under Bankruptcy Rules 2002 and 3017. The UST argues that service of paper documents by first class mail is required and that insufficient time was given to the parties to vote on the Plan. | This Court's Scheduling Order scheduled the dates utilized herein and provided that "service by either (i) e-mail where e-mail addresses are available, or (ii) first class mail, of the Plan" is proper. See [ECF Doc. No. 75 at 2]. As such, the Debtor complied with this Court's Order. Moreover, as explained in the Saxon Declaration, email is and always has been the Debtor's principal means of communication with the parties in this case. See Saxon Declaration at ¶ 5. In fact, the number of ballots received – 28 in total – demonstrates that service was proper as the parties received the Solicitation Package and were then able to make an informed decision to either accept or reject the Plan. The UST's argument on this point fails. |
| UST asserts Class 1 creditor – Breakout Capital LLC – was not properly served. | This argument is moot.  Breakout was served, and received and returned a ballot voting for the Plan. |
| Subparagraph (a) of section 13.1 of the Plan, which provides for a permanent injunction against the Debtor, effectively provides a discharge to the Debtor in violation of section 1192 of the Bankruptcy Code, which provides that a debtor may not receive a discharge until the completion of all payments under the plan where the plan is non-consensual. The parties do not know whether the Plan will be confirmed as a cram-down and this provision is improper. | This argument is moot, as the Debtor will not be proceeding under section 1191(b). |
| d) Section 13.2 of the Plan, titled as a "Release," is duplicative of Section 13.1 and is, therefore, extraneous and confusing and should be stricken. | Resolved. The Second Amended Plan has deleted section 13.2. |
| Section 13.3 of the Plan, which contains the Exculpation provision, is vague, overly broad, and improper. First, it exceeds the scope of section 1125(e). Second, there are no temporal limits as to the reach of this provision. Third, it covers a broad range of parties, many of whom are unidentified and may have no connection to the Chapter 11 Case. Fourth, the provision fails to provide a carveout for governmental units and their enforcement and regulatory actions. Fifth, the provision fails to carve out claims based on ethical or professional misconduct. | Resolved.  The Second Amended Plan has been amended to address each of the points raised by the UST. |
| There is no basis for the Debtor to treat section 507 priority tax claims (the Class 2 Claimants under the Plan) as unimpaired when they are not being paid in full upon the effective date of the Plan. The Plan proposes to pay them on the one-year anniversary of the Plan's | Resolved.  The Second Amended Plan has been amended to provide for payment on the Effective Date or as soon as such claim becomes an Allowed Claim. |

| Effective Date, without consideration of interest and the "lost time value of money in having to wait one year." | |
|---|---|

(Reply ¶ 12.)

### D. The Second Amended Plan Addresses the Objections

The Second Amended Plan addresses a number of issues raised in the Objections to the First Amended Plan in what appears good-faith efforts to cure the Objections. Furthermore, the Saxon Declaration discussed in the next section of this Opinion provides factual support to the injunction included in the Plan.

## III.   THE DECLARATION

On December 15, 2025, the Debtor filed the Saxon Declaration in support of entry of the Second Amended Plan. The declaration outlines Mr. Saxon's level of involvement at the firm ("intensive") and discusses the impact of litigation without the requested injunction (discussed *infra*). (Saxon Declaration ¶¶ 5-15.) Mr. Saxon notes, "In my judgment, based on nearly a decade of operating this business, if I am forced to simultaneously defend personal litigation while attempting to execute the Plan, the risk of Plan failure increases substantially. That outcome would harm all stakeholders, including creditors who have voted in favor of the Plan and who depend on the Debtor's continued operations for recovery." (*Id.* ¶ 15.) The Saxon Declaration also characterizes the injunction as "temporary in nature and limited to duration of the Plan" and sufficiently "narrowly tailored." (*Id.* ¶ 17.) Additionally, the Saxon Declaration asserts that the Second Amended Plan complies with the requirements of the Bankruptcy Code. (*Id.* ¶¶ 18-70.)

## IV.   ANALYSIS

To obtain confirmation of a plan of reorganization, a plan proponent must establish by a preponderance of the evidence that the plan has satisfied the requirements set forth under section 1129 of the Bankruptcy Code. *See JPMorgan Chase Bank, N.A. v. Charter Commc'ns*

16

*Operating, LLC (In re Charter Commc'ns, Inc.)*, 419 B.R. 221, 244 (Bankr. S.D.N.Y. 2009) (finding that the plan proponent bears the burden of establishing compliance with the factors set forth in section 1129 by a preponderance of the evidence); *see also In re Young Broad. Inc.*, 430 B.R. 99, 128 (Bankr. S.D.N.Y. 2010) (same).

"A plan under subchapter V of chapter 11 of the Bankruptcy Code may be confirmed as a consensual plan pursuant to section 1191(a) or as a nonconsensual plan under section 1191(b)." 8 COLLIER ON BANKRUPTCY ¶ 1191.01 (16th ed. 2021). Subchapter V eliminates several of the usual requirements for plan confirmation. Section 1181(b) renders section 1125 inapplicable to a case under subchapter V, and therefore a disclosure statement is not required "[u]nless the court for cause orders otherwise." 11 U.S.C. § 1181(b). Under section 1191(a), the court is required to confirm a plan that meets all of the requirements of section 1129(a) other than paragraph (15). 11 U.S.C. § 1191(a). Under section 1191(b), "the court, on request of the debtor, shall confirm the plan" if the plan complies with all of the requirements of section 1129(a) other than paragraphs (8), (10), and (15). 11 U.S.C. § 1191(b).[3]

"Importantly, the effects of confirmation differ depending on whether confirmation occurs under new § 1191(a) (where all classes have accepted it) or under new § 1191(b) (where one or more—or even all—classes have not accepted it)." Hon. Paul W. Bonapfel, Guide to the Small Business Reorganization Act of 2019 (rev. May 2020) ("Bonapfel").

The applicable requirements for confirmation under subchapter V, as well as the consequences of confirmation of a consensual versus a cramdown plan under subchapter V, are discussed below.

---

[3]    Section 1129(a)(15) is also made inapplicable to cases under subchapter V by section 1181(a). As nonconsensual plans in cases under subchapter V are evaluated under section 1191(b), section 1181(a) also makes section 1129(b) inapplicable to cases under subchapter V.

**A. Section 1129(a)**

      1.  <u>Section 1129(a)(1): Satisfied</u>

Section 1129(a)(1) requires that the plan comply with applicable provisions of the

Bankruptcy Code. 11 U.S.C. § 1129(a)(1). The plan, therefore, must satisfy sections 1122 and

1123 of the Bankruptcy Code. *In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In

determining whether a plan complies with section 1129(a)(1), reference must be made to Code

§§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of

reorganization.").

      a.  <u>Section 1122: Satisfied</u>

Section 1122 governs the classification of claims in plans. Section 1122 states:

> (a) Except as provided in subsection (b) of this section, a plan may place a
> claim or an interest in a particular class only if such claim or interest is
> substantially similar to the other claims or interests of such class.

> (b) A plan may designate a separate class of claims consisting only of every
> unsecured claim that is less than or reduced to an amount that the court
> approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

Claims or interests may only be placed in a particular class if such claims or interests are

"substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). "A

plan proponent is afforded significant flexibility in classifying claims under § 1122(a) if there is

a reasonable basis for the classification scheme and if all claims within a particular class are

substantially similar." *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr.

S.D.N.Y. 1992); *see also Aetna Cas. & Sur. Co. v. Chateaugay Corp. (In re Chateaugay Corp.)*,

89 F.3d 942, 949 (2d Cir. 1996) ("[C]lassification is constrained by two straight-forward rules:

Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason.").

Here, the Plan provides for five classes of claims and interests: (1) Breakout Capital Claims, (2) Priority Unsecured Claims, (3) Consignor Claims, (4) General Unsecured Claims Not Otherwise Classified, and (5) Interests.   (Second Amended Plan ¶ 5.3) There is nothing that suggests that any claims or interests have been improperly classified, and no one has objected on this basis.

Accordingly, the Plan **MEETS** the requirements of section 1122.

> b.   Section 1123: Satisfied

A subchapter V plan must fulfill the following seven requirements to satisfy section 1123(a):

> (1) designate classes of claims and interests;
> (2) specify unimpaired classes of claims and interests;
> (3) specify treatment of impaired classes of claims and interests;
> (4) provide for equality of treatment within each class;
> (5) provide adequate means for the plan's implementation;
> (6) provide for the prohibition of non-voting equity securities and provide an appropriate distribution of voting power among the classes of securities;
> (7) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors; and
> (8) in a case in which the debtor is an individual, provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan.

11 U.S.C. § 1123(a).  Section 1123(a)(8) is inapplicable to cases under subchapter V.  *See* 11 U.S.C. § 1181(a).

As required by section 1123(a)(1), the Plan designates the classes of claims and interests and specifies the treatment of each class.  (Second Amended Plan ¶¶ 6.1-6.5.)  Classes 1, 3, and

4 are impaired under the Second Amended Plan.  (*Id.*)  For Class 2, the Second Amended Plan indicates that the reorganized debtor will pay the Allowed Secured Claim in full in cash on the Effective Date or on the date each Class 2 Claim becomes allowed.  (*Id.* ¶ 6.2.)  For Class 5, the Second Amended Plan indicates that the reorganized debtor will be paid in full.  (*Id.* ¶ 6.5.)

The budget in the Projections shows the Debtor's projected ability to meet its obligations under the Plan.  (*Id.* Ex. B.)  As no one has objected, there is no reason to believe that the Projections are unrealistic.  Therefore, it appears that the Plan provides for adequate means of implementation.

The Second Amended Plan does not contemplate the issuance of new membership or equity interests in the Debtor, making section 1123(a)(6) inapplicable.

Section 1123(a)(7) has been satisfied because the provisions in the Second Amended Plan provide for the continuation of Mr. Saxon as Manager of the Debtor, which is consistent with the interest of creditors and equity security holders.

Accordingly, the Plan **MEETS** all the requirements of section 1123.  As the Plan meets the requirements of sections 1122 and 1123, the Plan **MEETS** the requirements of section 1129(a)(1).

## 2.   Section 1129(a)(2): Satisfied

Under section 1129(a)(2), the plan proponent must comply "with the applicable provisions" of the Bankruptcy Code.  11 U.S.C. § 1129(a)(2).  Courts have interpreted section 1129(a)(2) to require satisfaction of the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code.  *In re WorldCom, Inc.*, No. 02-13533(AJG), 2003 WL

23861928, at *25–26 (Bankr. S.D.N.Y. 2003); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986).

As noted above, section 1181(b) renders section 1125 inapplicable to cases under subchapter V, "[u]nless the court for cause orders otherwise." 11 U.S.C. § 1181(b). Therefore, a subchapter V plan must only comply with section 1126 to satisfy section 1129(a)(2).

Section 1126 indicates that a holder of a claim or interest may accept or reject a plan, outlines the classes entitled to vote on proposed plans, and describes how it is determined whether a class of claims or interests either accepts or rejects a plan. "A class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such plan." 11 U.S.C. § 1126(c). "Only creditors that actually voted count in determining whether the requisite majorities in number and amount are met." 7 COLLIER ON BANKRUPTCY ¶ 1126.04. "[A] class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation . . . is not required." 11 U.S.C. § 1126(f).

Here, the Plan indicates that Classes 2 and 5 are unimpaired and Classes 1, 3, and 4 are impaired. (Second Amended Plan ¶ 5.3.) The classification for Classes 2 and 5 appears correct, as they are to be paid in full and presumed to have accepted the plan. (*Id.* ¶¶ 6.1-6.5.) Classes 1, 3, and 4 appear to be correctly classified as impaired and that they are entitled to vote.

Therefore, the Plan **MEETS** the requirements of section 1129(a)(2).

3.   Section 1129(a)(3): Satisfied

Section 1129(a)(3) requires that the plan be "proposed in good faith and not by any

means forbidden by law."  11 U.S.C. § 1129(a)(3).  This means that the plan must have been

"proposed with honesty and good intentions and with a basis for expecting that a reorganization

can be effected."  *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988).  Courts have

held that a plan is considered proposed in good faith "if there is a likelihood that the plan will

achieve a result consistent with the standards prescribed under the [Bankruptcy] Code."  *In re

The Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Texaco Inc.*, 84

B.R. 893, 907 (Bankr. S.D.N.Y. 1988)).  "The requirement of good faith must be viewed in light

of the totality of the circumstances surrounding the establishment of a chapter 11 plan."  *Leslie

Fay*, 207 B.R. at 781 (citations omitted); *Greer v. Gaston & Snow (In re Gaston & Snow)*, 1996

WL 694421, at *9 (S.D.N.Y. Dec. 4, 1996) (stating that "failure to propose a plan in good faith

occurs when the Plan is not proposed with honesty, good intentions, and to effectuate the

reorganization of the enterprise, but rather for some other motive") (citing *Kane*, 843 F.2d at

649).

Here, the Plan appears to have been proposed in good faith, and no one has objected to

the Plan on this basis.  Accordingly, the Plan **MEETS** the requirements of section 1129(a)(3).

4.   Section 1129(a)(4): Satisfied

Section 1129(a)(4) mandates that:

Any payment made or to be made by the proponent, by the debtor, or by a person
issuing securities or acquiring property under the plan, for services or for costs and
expenses in or in connection with the case, or in connection with the plan and
incident to the case, has been approved by, or is subject to the approval of, the court
as reasonable.

22

11 U.S.C. § 1129(a)(4).  This requires a plan to provide for the disclosure and Court approval of payment of any fees promised or received in connection with the chapter 11 case.  *See* 7 COLLIER ON BANKRUPTCY ¶ 1129.03[4].

Here, the Plan provides that professional fees "must be applied for in accordance with the Code and the Plan and Allowed by order of the Bankruptcy Court before payment thereof may be made."  (Second Amended Plan ¶ 1.37.)

Therefore, the Plan **MEETS** the requirements of section 1129(a)(4).

5.  Section 1129(a)(5): Satisfied

Section 1129(a)(5) requires that:

(A) (i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

Here, the Second Amended Plan discloses that the current CEO, Mr. Saxon, will continue as the Debtor's Manager. The Plan discloses officer compensation of $45,000 per calendar quarter for the Debtor's officers during the life of the Plan.  (*Id.* Ex B.)

Therefore, the Plan **MEETS** the requirements of section 1129(a)(5).

6.  Section 1129(a)(6): Not Applicable

Under section 1129(a)(6), if the plan provides for changes in rates controlled by governmental agencies, the rate change must have been pre-approved by the relevant agency.  7 COLLIER ON BANKRUPTCY ¶ 1129.03[6].  This requirement applies to debtors who are "utilities

23

or other entities whose ability to price their products or services are subject to regulation by governmental agencies." *Id*.

The Debtor is not a utility or similar entity and therefore, this section is **NOT APPLICABLE** to the Plan.

       7.   Section 1129(a)(7): Satisfied

Section 1129(a)(7)—the so-called "best-interests" requirement—mandates that each class of claims or interests impaired under a plan must either have (i) accepted the plan, or (ii) would receive at least as much under the plan as it would under a chapter 7 liquidation.  11 U.S.C. § 1129(a)(7); 7 COLLIER ON BANKRUPTCY ¶ 1129.03[7].  To satisfy this second prong, parties will often submit estimates regarding the liquidation value of the company.  These valuations are estimates, "designed to reach a calculated decision on the basis of the hypotheses and assumptions in light of a set of facts."  *In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 297 (Bankr. S.D.N.Y. 1990).

Classes 1, 3, and 4 (the "Voting Classes") have voted to accept the First Amended Plan. (Voting Declaration ¶ 5.)   The Debtor provided a Liquidation Analysis attached to the Plan as Exhibit A.  (First Amended Plan Ex. A.)  The Liquidation Analysis indicates that creditors who voted to reject the First Amended Plan are to be paid more via the Plan than if this were a straight liquidation.

Accordingly, the Plan **MEETS** the requirements of section 1129(a)(7).

       8.   Section 1129(a)(8): Satisfied

Pursuant to section 1129(a)(8), a plan may be confirmed where, with respect to each class, either (i) such class has accepted the plan; or (ii) such class is not impaired under the plan.

11 U.S.C. § 1129(a)(8).  A class of claims is considered to have accepted a plan when at least

two-thirds in amount (i.e., dollar value) and more than one-half in number of allowed claims of

such class accept the plan, measured out of the claims that are actually voted.  11 U.S.C. §

1126(c).  For a class of "interests" (i.e., equity), acceptance by two-thirds in amount of allowed

interests is required.  11 U.S.C. § 1126(d).

If section 1129(a)(8) is not met, and if a plan otherwise satisfies section 1129(a)

(including the requirement that at least one impaired class of creditors has accepted the plan

under section 1129(a)(10)), the plan may still be confirmed provided section 1129(b) is met.  7

COLLIER ON BANKRUPTCY ¶ 1129.03[8].

A subchapter V case does not need to satisfy the requirements under section 1129(a)(8).

11 U.S.C. § 1191(b).  However, as discussed earlier in this Opinion, the Ballot Tabulation shows

that votes have been cast overwhelmingly in favor of accepting the plan.

Therefore, the Second Amended Plan **MEETS** the requirements of section 1129(a)(8).

9.  Section 1129(a)(9): Satisfied

Section 1129(a)(9) deals with the treatment of priority claims under section 507(a).

a.  *Section 1129(a)(9)(A): Satisfied*

Section 1129(a)(9)(A) requires that, except to the extent that the holder of a particular

claim agrees to a different treatment of such claim, the plan provide that:

(A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of
[the Bankruptcy Code], on the effective date of the plan, the holder of such claim
will receive . . . cash equal to the allowed amount of such claim;

11 U.S.C. § 1129(a)(9)(A).  Section 507(a)(2) specifies administrative expenses allowed under

section 503(b).  Section 507(a)(3) specifies unsecured claims in involuntary cases.

Section 1191(e) allows for payment of administrative claims under a plan in

nonconsensual subchapter V plans:

> Notwithstanding section 1129(a)(9)(A) of this title, a plan that provides for the
> payment through the plan of a claim of a kind specified in paragraph (2) or (3) of
> section 507(a) of this title may be confirmed under subsection (b) of this section.

11 U.S.C. § 1191(e).  The treatment of Administrative Expense Claims is as follows:

> Administrative Claims are not classified under the Plan in accordance with Section
> 1123(a)(1) of the Code. Each Allowed Administrative Claim shall be paid in full in
> the Allowed amount of such Administrative Claim in Cash from the Debtor's assets
> either: (i) within fifteen (15) Business Days after the date on which the Bankruptcy
> Court enters an order allowing such Administrative Claim; (ii) on the Effective
> Date of the Plan; or (iii) upon such later date as the Debtor and the holder of such
> Allowed Administrative Claim otherwise agree in writing.

Section 1129(a)(9)(A) appears to be satisfied because holders of Administrative Expense Claims

will be paid in cash in full on the Effective Date of the Plan, or upon other terms agreed to by the

holder of the claim and the Debtor.

### b.  Section 1129(a)(9)(B): Not Applicable

Section 1129(a)(9)(B) requires that, except to the extent that the holder of a particular

claim agrees to a different treatment of such claim, the plan provide that:

> (B) with respect to a class of claims of a kind specified in section 507(a)(1),
> 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of [the Bankruptcy Code], each holder
> . . . will receive—
>
> > (i) if such class has accepted the plan, deferred cash payments of a
> > value, as of the effective date of the plan, equal to the allowed
> > amount of such claim; or
> >
> > (ii) if such class has not accepted the plan, cash on the effective date
> > of the plan equal to the allowed amount of such claim;

11 U.S.C. § 1129(a)(9)(B).

There are no classes of claims of a kind specified in section 507(a)(1), 507(a)(5),

507(a)(6), or 507(a)(7).  Accordingly, the requirements of section 1129(a)(9)(B) are **NOT**

**APPLICABLE** to the Plan.

*c.   Section 1129(a)(9)(C): Satisfied*

Section 1129(a)(9)(C) requires that, except to the extent that the holder of a particular

claim agrees to a different treatment of such claim, the plan provide that:

(C) with respect to a claim of a kind specified in section 507(a)(8) of [the
Bankruptcy Code], the holder of such claim will receive . . . regular installment
payments in cash—

(i) of a total value, as of the effective date of the plan, equal to the allowed
amount of such claim;

(ii) over a period ending not later than 5 years after the date of the order for
relief . . . and

(iii) in a manner not less favorable than the most favored nonpriority
unsecured claim provided for by the plan . . . .

The Plan provides:

Priority Tax Claims are not classified under the Plan in accordance with Section
1123(a)(1) of the Code. Each holder of an Allowed Priority Tax Claim shall either
be paid (i) in full in Cash on the date that is fifteen (15) days after the date on which
the Bankruptcy Court enters an order allowing such Priority Tax Claim, or as soon
thereafter as is practicable, or (ii) in equal semi-annual installments over a period
ending not later than three (3) years after the Effective Date, or such other time not
to exceed five (5) years fixed by the Court, of a total value, as of the Effective Date,
equal to the Allowed amount of such Priority Tax Claim in accordance with Section
1129(a)(9)(C) of the Code.

(Second Amended Plan ¶ 4.1.)

Accordingly, the Plan **MEETS** the requirements of section 1129(a)(9)(C).  Given that the

Plan satisfies the requirements of section 1129(a)(9)(A)–(C), as applicable, the Plan therefore

**MEETS** the requirements of section 1129(a)(9).

10. Section 1129(a)(10): Not Required for Subchapter V Cases

A subchapter V case does not need to satisfy the requirement under section 1129(a)(10). 11 U.S.C. § 1191(b).

However, Section 1129(a)(10) requires at least one class of impaired claims—if there are any impaired classes—to have accepted the Plan. At this point, all impaired classes who were entitled to vote on the Plan have voted in favor of accepting the Plan. Accordingly, the Second Amended Plan **MEETS** the requirements of section 1129(a)(10).

11. Section 1129(a)(11): Satisfied

Section 1129(a)(11) requires the Court to determine that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

*Id.* § 1129(a)(11). That requirement, commonly known as the "feasibility" standard, requires that "the Plan is workable and has a reasonable likelihood of success." *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. at 762. "It is not necessary that success be guaranteed, but only that the plan present a workable scheme of organization and operation from which there may be a reasonable expectation of success." *Id.* (quoting 5 COLLIER ON BANKRUPTCY ¶ 1129.02[11], at 1129-54 (15th ed. 1991)); *see also In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) ("[T]he plan proponent need only demonstrate that there exists the reasonable probability that the provisions of the Plan can be performed") (internal quotation omitted). "A plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely." *In re American Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012). "The debtor must offer more than speculation

28

about the source of funding for the plan." *Crestar Bank v. Walker (In re Walker)*, 165 B.R. 994,

1003 (E.D. Va. 1994).

Courts have identified a number of factors to examine to determine whether a proposed

plan is feasible:

(1) the adequacy of the capital structure;
(2) the earning power of the business;
(3) the economic conditions;
(4) the ability of management;
(5) the probability of the continuation of the same management;
(6) the availability of prospective credit, both capital and trade;
(7) the adequacy of funds for equipment replacements;
(8) the provisions for adequate working capital; and
(9) any other matter bearing on the successful operation of the business to
enable performance with the provisions of the plan.

The Second Amended Plan proposes to "pay creditors of the Debtor from the Debtor's

disposable income from its operations for a period of 60 months." (Second Amended Plan ¶

2.1.) The Projections, while they have some months and periods of negative cashflow, indicate

that factor 2 (earning power of the business) and factor 3 (economic conditions) will be met. No

parties objected to the proposed budget. Factor 4 (the ability of management) and factor 5 (the

continuation of management) is implicated by Mr. Saxon continuing in his role as Member. The

positive outlook of the Projections indicate that the Debtor has a feasible business model going

forward.

Therefore, the Plan **MEETS** the requirements of section 1129(a)(11).

12. Section 1129(a)(12): Not Applicable

Section 1129(a)(12) requires that fees payable under 28 U.S.C. § 1930, as determined by

the court at a hearing on confirmation of a plan, have been paid or are provided under the plan to

be paid on its effective date. Quarterly U.S. Trustee fees are not required to be paid in a case

under subchapter V.  28 U.S.C. § 1930(a)(6)(A).  However, other fees under section 28 U.S.C. §

1930 remain applicable.

Here, the Plan has not mentioned the treatment of fees payable under 28 U.S.C. § 1930.

As such section 1129(a)(12) is **NOT APPLICABLE**.

### 13. Section 1129(a)(13): Not Applicable

Section 1129(a)(13) requires a plan to provide for retiree benefits at levels established

pursuant to section 1114.  11 U.S.C. § 1129(a)(13).  The Debtor does not appear to have any

outstanding retiree benefit obligations.  Section 1129(a)(13) is **NOT APPLICABLE**.

### 14. Section 1129(a)(14): Not Applicable

Section 1129(a)(14) applies to individual chapter 11 debtors who are required to pay a

domestic support obligation.  7 COLLIER ON BANKRUPTCY ¶ 1129.02[14].

Because the Debtor is not an individual, section 1129(a)(14) is **NOT APPLICABLE**.

### 15. Section 1129(a)(15): Not Required for Subchapter V Cases

A subchapter V case does not need to satisfy the requirement under section 1129(a)(15).

11 U.S.C. § 1191(b).

### 16. Section 1129(a)(16): Not Applicable

Section 1129(a)(16) states that "all transfers of property under [a] plan shall be made in

accordance with any applicable provisions of non-bankruptcy law that govern the transfer of

property by a corporation or trust that is not a moneyed, business, or commercial corporation or

trust." *Id.* § 1129(a)(16). "This provision limits the permissible transfers by any nonprofit

entity[.]" 7 COLLIER ON BANKRUPTCY ¶ 1129.02.

The Debtor is not a non-profit entity, so, section 1129(a)(16) is **NOT APPLICABLE**.

### B.  Section 1129(b) Cramdown Standards in Subchapter V: Not Applicable

Section 1129(b), the usual "cramdown" provision in a chapter 11 case, does not apply in

subchapter V cases.  11 U.S.C. § 1181(a).  Instead, section 1191(b) is the applicable cramdown

provision in subchapter V cases.  Section 1191(b) provides:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of
> section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section,
> are met with respect to a plan, the court, on request of the debtor, shall confirm the
> plan notwithstanding the requirements of such paragraphs if the plan does not
> *discriminate unfairly*, and is *fair and equitable*, with respect to each class of claims
> or interests that is impaired under, and has not accepted, the plan.

*Id.* § 1191(b) (emphasis added).

The Plan is being confirmed consensually under section 1191(a) of the Bankruptcy Code.

Therefore, the cramdown standards specified in section 1191(b) are **NOT APPLICABLE**.

### C.  Section 1129(c): Not Applicable to Subchapter V Cases

Section 1129(c) of the Bankruptcy Code provides that a court "may only confirm one

plan."  *Id.* § 1129(c).  However, section 1129(c) is not applicable to subchapter V cases.  *Id.* §

1181(a).  Nevertheless, there is only one Plan submitted here.

### D.  Section 1129(d): Not Applicable

Section 1129(d) provides that "on request of a party in interest that is a governmental

unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of

taxes or the avoidance of the application of section 4 of the Securities Act of 1933."  *Id.* §

1129(d).

Here, no such request was made from a governmental unit.  Regardless, it does not

appear that the Plan's purpose is for the avoidance of taxes or the application of securities laws.

Accordingly, section 1129(d) is **NOT APPLICABLE**.

31

### E.  The Injunction Included in the Plan Is Permissible

Carrol and the UST objected to the Third-Party Injunction included in the Plan as impermissible.  Carrol's objection was resolved and withdrawn during the confirmation hearing, but the UST Objection remains.  The Objection is overruled.  The Debtor has clarified that the injunction, if approved, is only in place for the life of the Plan (5 years); it does not discharge any personal liability that Mr. Saxon may have regarding <u>debts on which he may be a co-debtor with the Debtor</u>.  As such, it is permissible.  The decision by Judge Mastando in *In re Hal Luftig Co.*, 667 B.R. 638, 658–60 (Bankr. S.D.N.Y. 2025), provides a sufficient answer to this Objection.  The Saxon Declaration (ECF Doc. # 87), admitted in evidence at the Confirmation Hearing, provides the necessary factual predicate to support this ruling, with respect to Mr. Saxon's continued personal involvement to make this Debtor's reorganization successful.  All creditors who will recover under the Plan are benefited by his undistracted management role.

## V.    <u>CONCLUSION</u>

Given the above, the Court **CONFIRMS** the Plan.  The remaining objections have been withdrawn or are overruled.

A separate Order will be entered.

Dated:    December 19, 2025
          New York, New York

                        *Martin Glenn*
                        _____
                        MARTIN GLENN
                        United States Bankruptcy Judge